**Leshurn HUNT, Plaintiff–Appellant,**

v.

**Allen JAGLOWSKI, Daniel Noon, Reynaldo Guevara, Russell Weingart, William Kaupert, Nick Gaudio, in their individual and official capacities; the City of Chicago, a municipal corporation; and Alfred Petrocelli, Defendants–Appellees.**

No. 88–2183.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 7, 1990.

Decided March 7, 1991.

Rehearing and Rehearing In Banc Denied April 29, 1991.

Edward W. Feldman, Miller, Shakman, Nathan & Hamilton, John S. Elson, Joe

Marqulies, Northwestern University Legal Clinic, Chicago, Ill., for plaintiff-appellant.

Judson H. Miner, Ruth M. Moscovitch, Asst. Corp. Counsel, Office of the Corp. Counsel, Appeals Div., Joseph D. Ryan, Thomas M. Davy, Asst. State's Atty., Lawrence Krulewich, State's Atty., Office of the State's Atty., of Cook County, L. Anita Richardson, Joseph A. Moore, James P. McCarthy, Maureen A. Murphy, Corp. Counsel, Robert W. Fioretti, Kelly R. Welsh, Asst. Corp. Counsel, Office of the Corp. Counsel, James D. Montgomery, Montgomery & Associates, Chicago, Ill., for defendants-appellees.

Before CUMMINGS and COFFEY, Circuit Judges, and GORDON, District Judge.[*]

COFFEY, Circuit Judge.

Plaintiff Leshurn Hunt appeals the district court's order granting a directed verdict in favor of defendant Alfred Petrocelli. The district court determined that Assistant State's Attorney Petrocelli was entitled to prosecutorial immunity because he was performing a "purely prosecutorial role" with respect to Hunt. We affirm.

## I. PROCEDURAL POSTURE

Leshurn Hunt filed a civil rights complaint naming as defendants the City of Chicago; Police Officers Alan Jaglowski, Daniel Noon, Reynaldo Guevara, Russell Weingart, William Kauport, Nick Gaudio; and Illinois Assistant State's Attorney Alfred Petrocelli. The police officers and the Assistant State's Attorney were sued both in their individual and official capacities. The complaint asserted federal claims under 42 U.S.C. § 1983 of the Civil Rights Act relating to Hunt's arrest for armed robbery and murder. Hunt alleged in his complaint that he was arrested and his house was searched without a warrant; that excessive force was used during the arrest; that his detention was excessive

because he was held and interrogated numerous times over a 24–hour period before being presented to a judicial officer; that force was used to secure a confession; that he was denied assistance of counsel;[1] and that the City had a custom of police misconduct of this type. Finally, the complaint alleged violations of state law, specifically that the conduct complained of constituted assault, battery, and intentional infliction of emotional distress.

On April 4, 1988, the case was tried to a jury. At the close of Hunt's case, defendant Petrocelli moved for and was granted a directed verdict on Hunt's claims. At the close of the trial, the jury returned a verdict in favor of Hunt and against the defendants Weingart and the City of Chicago on the excessive detention claim while the remaining claims were resolved against Hunt and in favor of the defendants. As to the excessive detention claim, the jury awarded $10,000 in damages against the City and $1 in damages against Weingart. The defendants filed an appeal from the jury's verdict and the denial of their motion JNOV, and Hunt filed a cross-appeal. On August 15, 1990, the trial court granted the defendants' motion for voluntary dismissal of their appeal of the excessive detention claim. At the time of oral argument on September 7, 1990, only Hunt's cross-appeal remained.

Although Hunt's brief on appeal alleges in its issues presented section that the judgment is being appealed in its entirety, the arguments in Hunt's initial brief and the reply brief are directed solely to Assistant State's Attorney Alfred Petrocelli's actions. Hunt's counsel failed to present any arguments directed against the City of Chicago or the police officers at oral argument as well. This court has previously stated that "[a]n issue expressly presented for resolution is waived if not developed by argument." *Anderson v. Gutschenritter*, 836 F.2d 346, 349 (7th Cir.1988) (citing *Hunter v. Allis Chalmers*, 797 F.2d 1417, 1430 (7th Cir.1986)). "[A]n appellant is re-

---

[*] The Honorable Myron L. Gordon, Senior District Judge for the United States District Court for the Eastern District of Wisconsin, is sitting by designation.

[1] Hunt later dismissed his claim that he was denied assistance of counsel.

quired by Rule 28(a)(4) of the Federal Rules of Appellate Procedure to present in his brief to the appellate court the issues that he desires to litigate and to support his argument on those issues with judicial authority." *United States v. Brown*, 899 F.2d 677, 679 n. 1 (7th Cir.1990) (citing *Zelazny v. Lyng*, 853 F.2d 540, 542 n. 1 (7th Cir.1988)). Because of Hunt's failure to offer any substantive argument in either his appellate brief or at oral argument in support of his claims against the City of Chicago and the police officers, those claims are waived. *Lachman v. Illinois State Board of Education*, 852 F.2d 290, 291 (7th Cir.1988). Therefore, we limit our review to Hunt's claims against Petrocelli.

## II. FACTS

On February 14, 1983, Leshurn Hunt's brother, Rodney, was arrested for armed robbery and the shooting death of James Duffy in a tavern located at 4223 West North Avenue in Chicago, Illinois. Rodney told police that his brother, Leshurn Hunt, also participated in the Duffy crimes. Leshurn Hunt was arrested in his apartment between 5:30 and 6 a.m. on February 15, 1983, and was taken to Area 5 Violent Crimes Headquarters, arriving sometime between 6 and 6:15 a.m. He was fingerprinted and photographed, but was not taken before that morning's court call because he voluntarily agreed to take a polygraph test, which lasted until noon that day. A lineup was arranged and held around 7 p.m. that night, and Hunt was identified by an eyewitness as being one of the two perpetrators involved in the Duffy homicide. Sometime between 9 and 10 p.m. that same night, the police brought Hunt and his brother Rodney together, and during the meeting, the brothers implicated two other persons who were located shortly thereafter and brought to Area 5 Headquarters sometime between 10:30 p.m. on February 15 and 2:30 a.m. on February 16. After an interview and investigation, it was determined that neither individual was involved in the Duffy murder. At approximately 12:30 a.m. on February 16, the brothers named Roberto "Rebel" Castillo as a third participant in the crime, who was in turn brought to Area 5 Headquarters at approximately 1 a.m. on February 16. Castillo admitted being at the scene of the robbery and murder of Duffy but denied any participation in the actual crimes. He said that he had remained outside the tavern and that Hunt and Rodney were in the tavern when the robbery and murder occurred.

Hunt confessed to the Duffy killing sometime between 2 and 2:30 a.m. on February 16 after he was informed that he had been identified in the lineup. At this time Assistant State's Attorney Alfred Petrocelli was called to review the charges against Hunt. Petrocelli arrived at Area 5 Headquarters less than two hours later at approximately 3:15 a.m. After Petrocelli gave Hunt his *Miranda* warnings, Hunt gave Petrocelli an oral statement confessing to the Duffy crimes which was recorded by a court reporter. After being conveyed in a special transport squadrol to the criminal court building, Hunt made his initial appearance before Judge Urso of the Circuit Court of Cook County on February 16, approximately 30 hours after his arrest.

There was conflicting testimony at trial. Hunt testified that over the course of the 30–hour detention he was repeatedly interrogated by rotating teams of the police officers, that he was beaten by some of the police officers, that he was given little food or water, that he was chained to a wall, and was deprived of sleep. The government disputed this testimony. Hunt also testified that he told Assistant State's Attorney Petrocelli that he had been beaten, that he had not been allowed to see his lawyer, that he had been deprived of food and water, and that his confession had been coerced. Further, Hunt stated that he showed Petrocelli several bruises on his body and that Petrocelli responded that there was nothing he could do because he was just there to take Hunt's statement. At this time, Hunt stated that Petrocelli left the interrogation room and one of the police officers re-entered the room, accused him (Hunt) of "telling on him" and threatened to resume the beatings. Hunt admitted that at this point he agreed to make a

confession after which Petrocelli came back into the room. According to Hunt, a detective read the prepared question and answer confession statement to the court reporter.

At the close of Hunt's evidence, the district court granted Petrocelli's motion for a directed verdict.[2] Hunt appeals the trial court's granting of Petrocelli's motion for a directed verdict.

## III. DISCUSSION

Because Hunt failed to address any arguments in his briefs or at oral argument concerning the City of Chicago and the police officers, the only issue before this court is whether the district court properly granted Petrocelli's motion for a directed verdict on the grounds that he was entitled to immunity in his role as prosecutor:

"The determination of whether a prosecutor was acting within his or her quasi-judicial capacity and thus absolutely immune from suit is a legal question. If properly raised by the defendant, it is a matter to be decided by the trial court in light of the particular facts of the case regarding the actual conduct of the defendant."

*Burns v. Reed*, 894 F.2d 949, 952–53 n. 2 (7th Cir.1990). This court's review of legal questions is *de novo*. *United States v. Bucey*, 876 F.2d 1297, 1301–02 (7th Cir. 1989).

Hunt claims that the district court erred in directing the verdict for Assistant State's Attorney Petrocelli in the face of evidence that Petrocelli not only failed to stop, but actually participated in, the police officers' attempt to coerce Hunt's confession. The substance of the evidence Hunt presented against Petrocelli was his own testimony that after Hunt had allegedly told Petrocelli in private that the police officers had coerced him into agreeing to confess, Petrocelli said he could do nothing about it and left the interrogation room, and further that a few minutes later, one

of the police officers came in, accused Hunt of "telling on him," and threatened him again. Hunt stated that after that statement by the officer he agreed to confess, at which time Petrocelli returned to witness and sign his confession. Therefore, in light of his testimony that he had told Petrocelli that the police officers had coerced him into agreeing to confess and that the police officer, when alone with Hunt, threatened Hunt because of what Hunt had just told Petrocelli, Hunt argues that a jury could reasonably conclude that Petrocelli knew of the coercion, shared in its goal, and contributed to its effectiveness.

■ "[I]n initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages...." *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 995, 47 L.Ed.2d 128 (1976). This court has given *Imbler* a broad reading:

"When determining which type of immunity a [prosecutor] enjoys, we look to the nature of the function that the [prosecutor] was performing in the particular case. If a [prosecutor's] function was quasi-judicial, the [prosecutor] enjoys absolute immunity. If the function was administrative or investigatory, the [prosecutor] enjoys only qualified immunity."

*Henderson v. Lopez*, 790 F.2d 44, 46 (7th Cir.1986). Under Illinois law, "it is a familiar and firmly established principle that the State's Attorney, as a member of the executive branch of government, is vested with exclusive discretion in the initiation and management of a criminal prosecution." *People ex rel. Daley v. Moran*, 94 Ill.2d 41, 67 Ill.Dec. 790, 792, 445 N.E.2d 270, 272 (1983). This discretion also encompasses the determination of which charges shall be brought. *People v. Pankey*, 94 Ill.2d 12, 67 Ill.Dec. 804, 807, 445 N.E.2d 284, 287 (1983). This court has previously noted

---

**2.** During the presentation of the remainder of the defendants' case, Petrocelli testified on the defendants' behalf. Petrocelli denied that Hunt had made any complaints regarding his treatment by the police, that he had requested and was denied counsel, that he was aware of any

injuries to him, and further that Hunt told him that his confession had been coerced. As to Hunt's claim that a detective read a prepared question and answer confession statement to the court reporter, Petrocelli testified that he asked the questions and Hunt responded.

that the determination of the reach of a prosecutor's absolute immunity has engendered a "case-by-case approach to the question." *Burns v. Reed,* 894 F.2d 949, 954 (7th Cir.1990).

In a case very similar to ours, the district court granted the defendant-Assistant State's Attorney's motion to dismiss after it found that the Assistant State's Attorney was absolutely immune from civil liability for his actions. *Boyd v. Village of Wheeling, et al.,* 83 C 4768, 1985 WL 2564 (N.D. Ill. slip op. September 12, 1985, Judge Grady). In *Boyd,* the plaintiff testified that Assistant State's Attorney Zehe had been called to the police station after the plaintiff had been questioned by the police and that Zehe had been informed of improper and coercive procedures used to interrogate the plaintiff. The plaintiff alleged that Zehe, despite this knowledge, failed to terminate the illegal questioning, and instead proceeded to interrogate the plaintiff himself. The plaintiff contended that during this questioning, Zehe was acting as an investigator, not a prosecutor, and that therefore his actions were not subject to absolute immunity. The district court granted Zehe's motion to dismiss:

> "In this case, Zehe was not called to the station till long after plaintiff was first detained and questioning began. In fact, Zehe was not called until after plaintiff had confessed. It is reasonable, indeed desirable, that Zehe questioned plaintiff himself to verify the confession obtained by the police before making his own decision whether or not to file charges. Zehe did not participate in the decision to interrogate plaintiff for seven hours, call in a hypnotist and hold plaintiff until he confessed. We find, therefore, that Zehe's actions were part of his quasi-judicial function in gathering and evaluating evidence in order to make a prosecutorial decision as to whether or not to file charges. Zehe is absolutely immune from civil liability for his actions in connection with this case, and accordingly,

all claims under section 1983 against him are dismissed."

*Boyd* at 20–21.

█ In the instant case, Hunt testified that he had no contact with Assistant State's Attorney Petrocelli until after he had confessed and agreed to give a statement. Since the State's Attorney's Office is the agency that actually charges, Petrocelli's function in being present was merely to review, approve or disapprove, and issue the charges the police were seeking. The police had conducted the investigation of this case, as was their function, before Petrocelli was called. Petrocelli was not present at the time Hunt was arrested and taken to Area 5; Petrocelli was not present during the polygraph test nor the lineup; Petrocelli was not present when Hunt claims he was beaten; and Petrocelli was not present at the particular time Hunt alleges he gave his coerced confession. Like the plaintiff in *Boyd,* Hunt's initial contact with Petrocelli came when Petrocelli was called after Hunt had confessed and the police were seeking review of and approval or disapproval of the charges they were detaining him on. Because this is an act toward "initiating a prosecution and in presenting the State's case," Petrocelli enjoyed absolute immunity. *Imbler,* 96 S.Ct. at 996. Furthermore, Hunt presented merely bald fabrications as to what Petrocelli said to one of the detectives after Hunt originally said he did not want to give a statement. Therefore, Hunt's claim that Petrocelli "told on him" with the result being more coercion by the police is a statement without support in the record and is thus without merit.[3]

█ Hunt also claims on appeal that the dismissal of Petrocelli at the close of Hunt's evidence prejudiced Hunt's case by biasing the jury in favor of the remaining defendants. Hunt's argument is basically that Petrocelli's dismissal upset his trial strategy. By dismissing Hunt's case against Petrocelli, Hunt argues that the trial court "lifted Petrocelli from the perceived bias of being a personally interested

---

3. As we noted in footnote 2, Petrocelli, in his testimony on behalf of the remaining defen-

dants, denied that Hunt had told him that his confession had been coerced.

defendant." Thus, Hunt claims that the court thereby enabled the police defendants to present Petrocelli as a neutral and disinterested observer. This argument is far from convincing. The fact that Petrocelli's dismissal may have upset Hunt's trial strategy with respect to the remaining defendants is of no concern to a trial judge, and it borders on the absurd to suggest that it is a proper legal ground on which to argue for reversal of the trial court's ruling. To hold otherwise would be to risk upsetting the delicate line of impartiality that the independent tribunal must walk. Furthermore, under Rule 611 of the Federal Rules of Evidence, Hunt had the opportunity to call Petrocelli as an adverse witness. Therefore, if Hunt's trial strategy had called for him to ask Petrocelli certain questions, he should have done so in his case.

## IV. CONCLUSION

The district court's action in directing the verdict in favor of Illinois Assistant State's Attorney Petrocelli on the basis of prosecutorial immunity at the close of Hunt's case because Petrocelli did not engage in investigative or administrative activities or the alleged coercion by the police officers was proper. The decision of the district court is

AFFIRMED.