**Marshall C. SPIEGEL, Plaintiff–Appellant,**

v.

**Daniel M. RABINOVITZ, Defendant–Appellee.**

No. 96–2150.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 10, 1997.

Decided June 2, 1997.

Opinion Published July 28, 1997.[1]

---

1. Pursuant to Circuit Rule 53, this opinion was originally issued as an unpublished order on June 2, 1997. The court, upon request, issues this decision as an opinion.

David C. Thomas (argued), Chicago, IL, for plaintiff–appellant.

Terry L. McDonald, Patrick M. Blanchard (argued), Office of the State's Attorney of Cook County, Chicago, IL, for defendant–appellee.

Before BAUER, EASTERBROOK and DIANE P. WOOD, Circuit Judges.

BAUER, Circuit Judge.

■ On May 29, 1993, Marshall Spiegel ("Spiegel") and his family were disturbed by the clamor of hammering emanating from the apartment above them. This was not the first time that the Spiegels had endured such racket. Spiegel's wife, Carol, walked upstairs to complain. She soon became embroiled in an argument with the upstairs tenants, Loren Cherny and his common-law wife, Mim Bobbin.[2] Overhearing this argument, Spiegel dashed upstairs holding his young son in his arms. Some time after Spiegel reached the upstairs apartment, Bobbin threatened that Cherny would kill Spiegel. Cherny struck Spiegel in the back, and Bobbin also hit him. The record is not clear as to what occurred between the time of Spiegel's arrival upstairs and the ensuing threat and blows. We do know, however, that Spiegel never laid his hands on Bobbin or Cherny.

On May 31, 1993, Spiegel reported the incident to the police. On June 23, Spiegel filed criminal complaints, charging Bobbin and Cherny with battery. When they learned of these charges on June 25, Bobbin and Cherny, in turn, filed criminal battery complaints against Spiegel. Specifically, these complaints charged Spiegel with committing battery against Cherny. On that same day, Spiegel was booked, fingerprinted and placed in a cell for over an hour before he posted bond and was released.

The two criminal cases were placed on the same court call for August 4, 1993. On that same day, Daniel Rabinovitz, a Cook County Assistant State's Attorney, was assigned to assess whether the office should pursue one or both of the cases. Rabinovitz reviewed the police reports, spoke with the police officers involved, and questioned all of the players in this case after administering a *Miranda* warning to each of them. He then submitted his evaluation to his superiors.

The State's Attorney's Office decided to pursue only Bobbin's and Cherny's case against Spiegel. Spiegel was tried and acquitted. In the interim, Spiegel claims that he was evicted from his apartment, his employment status with the Chicago Mercantile Exchange was "adversely affected," and he lost and continues to lose income.

2. The record is not clear as to whether and how Bobbin and Cherny are common-law husband and wife. Illinois, of course, does not recognize common-law marriages. But if a couple contracts a common-law marriage and that couple is domiciled in another state that recognizes common-law marriage, Illinois will consider that marriage valid if the couple subsequently sets up its domicile here. Generally, those jurisdictions that recognize common-law marriages have determined that the essence of a common-law marriage is a present intent to enter into the contract of marriage usually coupled with cohabitation and a holding out of the marital relationship in the couple's community of residence. Thus, it is possible that Bobbin and Cherny were once domiciled in a state that recognizes, or once recognized, common-law marriage. For all we know, the couple may have lived in such a state, consummated their relationship, held themselves out before both God and man to be husband and wife, and then later decided to set up shop in Illinois, all before they got into this scrape with Spiegel. However, suffice it to say that we need not, nor do we wish to, delve into the sordid details as to why Bobbin is referred to as Cherny's "common-law wife" in the proceedings below.

Spiegel brought this action under Title 42 U.S.C. § 1983 against Rabinovitz in his individual capacity. Spiegel alleged that the State's Attorney's Office relied on Rabinovitz's report when it decided not to pursue Spiegel's battery case against Bobbin and Cherny and went ahead with Bobbin's and Cherny's battery case against Spiegel. Spiegel alleged that Rabinovitz conducted a willfully incomplete and inadequate assessment of the case. According to Spiegel, Rabinovitz should have uncovered a signed, written statement by Bobbin which failed to mention that Spiegel touched Cherny. Spiegel also claimed the Rabinovitz should have realized that Cherny manufactured evidence by submitting a photograph of a bruise that Spiegel could not have inflicted. Spiegel believed that Rabinovitz overlooked witnesses, including a disinterested neighbor, who could have corroborated Spiegel's version of the events of May 29. Spiegel further contended that Rabinovitz should have been mindful that Cherny's and Bobbin's charges against Spiegel came only after they learned of his charges against them. Finally, Spiegel maintained that Rabinovitz was biased against Spiegel because Spiegel at one time had filed charges with the Attorney Registration and Disciplinary Commission against one of Rabinovitz's co-workers. With Spiegel as the complaining witness, Rabinovitz subsequently prosecuted and lost this case against his co-worker.

Spiegel alleged that Rabinovitz's acts and omissions, conducted under color of state law, violated Spiegel's Fifth and Fourteenth Amendment rights. Spiegel maintained that Rabinovitz's actions were intentional and malicious and constituted reckless disregard for Spiegel's constitutional rights. He requested compensatory damages and punitive damages. In response, Rabinovitz brought a 12(b)(6) Motion to Dismiss, asserting that he, as a prosecutor, was absolutely immune from suit and that Spiegel failed to raise issues cognizable under 42 U.S.C. § 1983. The district court found that Spiegel had stated a claim for malicious prosecution under § 1983 but that Rabinovitz was absolutely immune from suit. The district court dismissed Spiegel's case. Spiegel now appeals, arguing that the district court erred when it determined that Rabinovitz was absolutely immune from suit.

■ We review *de novo* a district court's 12(b)(6) dismissal. *Ledford v. Sullivan,* 105 F.3d 354, 356 (7th Cir.1997) (citation omitted). We accept as true all facts alleged in the complaint and draw all reasonable inferences from them in the plaintiff's favor. *Id.* (citations omitted). We will affirm the dismissal of a complaint if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Id.* (quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984)).

■ Title 42 U.S.C. § 1983 creates a federal cause of action for "the deprivation, under color of [state] law, of a citizen's rights, privileges, or immunities secured by the Constitution and laws of the United States." *Id.* (quoting *Livadas v. Bradshaw,* 512 U.S. 107, 132, 114 S.Ct. 2068, 2082, 129 L.Ed.2d 93 (1994)). Section 1983 is not itself a font for substantive rights; instead it acts as an instrument for vindicating federal rights conferred elsewhere. *Id.* at 356 (citation omitted). The first step in any § 1983 analysis is to pinpoint the specific constitutional right which was allegedly violated. *Id.* (citing *Graham v. Connor,* 490 U.S. 386, 394, 109 S.Ct. 1865, 1870, 104 L.Ed.2d 443 (1989); *Kernats v. O'Sullivan,* 35 F.3d 1171, 1175 (7th Cir.1994)). The validity of the claim must then be judged by reference to the specific constitutional standard which governs that right. *Graham,* 490 U.S. at 394, 109 S.Ct. at 1870.

■ In this case, Spiegel presents his claim of malicious prosecution within the confines of substantive due process. The protections of substantive due process have been conferred primarily upon matters relating to marriage, family, procreation, and the right to bodily integrity. *See, e.g., Planned Parenthood of Southeastern Pa. v. Casey,* 505 U.S. 833, 847–49, 112 S.Ct. 2791, 2804–05, 120 L.Ed.2d 674 (1992) (describing cases in which substantive due process rights have been recognized). Spiegel's malicious prosecution claim is strikingly different from those rights

which have been recognized under the rubric of substantive due process.

■ In general, the common law tort of malicious prosecution does not amount to the deprivation of a constitutional right under 42 U.S.C. § 1983; however, malicious prosecution, like the common-law tort of defamation, can be a *component* of a constitutional tort. *Albright v. Oliver*, 975 F.2d 343, 346 (7th Cir.1992). For example, in *Albright*, we stated that defamation accompanying a discharge from a job can make it impossible for a person to procure equivalent employment elsewhere, thus depriving him of the liberty of occupation, one of the liberties protected by the Due Process Clause. *Id.* In the same vein, malicious prosecution can result in imprisonment, which is likewise a deprivation of liberty within the confines of the Due Process Clause. *Id.* Put another way, we said that in the absence of "incarceration or other palpable consequences," malicious prosecution should not be actionable as a constitutional wrong. *Id.* at 347.

In *Albright*, a criminal information was issued charging Albright with drug trafficking. Albright was booked and posted bond. One condition of his bond was that he not leave Illinois without the court's permission. Shortly before trial was to begin, the court dismissed the information against Albright because it failed to state an offense recognized under Illinois law.

Albright subsequently brought a § 1983 claim in federal district court. Albright alleged that the case had received some publicity and that he missed a job interview in St. Louis due to the travel restriction of his bond. He argued that these consequences resulted from his prosecution and were sufficiently serious to elevate his common-law malicious prosecution claim to the level of a constitutional tort. On appeal, we disagreed, reasoning:

> The medley of harms that a malicious prosecution inflicts when, as in this case, the defendant is exonerated before any punishment is imposed-indeed, before he is even put on trial—is similar to that inflicted by defamation, which by impairing a person's reputation not only embarrasses and even outrages him but also under-

mines his ability to make favorable transactions, whether business or personal, thereby subjecting him to costs pecuniary or nonpecuniary or both. It also puts him to the expense of bringing a suit for defamation to recover his good name. If the injuries that defamation imposes do not constitute a deprivation of liberty or property within the meaning of the due process clause, then neither do the injuries that malicious prosecution imposes.

*Id.* at 345–46. Albright's case subsequently went before the United States Supreme Court.

Before the Supreme Court, Albright claimed that police violated only his substantive due process right to be free from prosecution without probable cause. *Albright v. Oliver*, 510 U.S. 266, 271, 114 S.Ct. 807, 811, 127 L.Ed.2d 114 (1994). The Supreme Court affirmed our decision, but the plurality did so on different grounds. Writing for the plurality, Chief Justice Rehnquist, joined by Justices O'Connor, Scalia and Ginsburg, held that an allegation of arrest without probable cause must be analyzed under the Fourth Amendment without reference to more general considerations of due process. *Id.* at 281, 114 S.Ct. at 816. Specifically, the plurality opined that "substantive due process, with its 'scarce and open-ended' 'guideposts,' can afford ... no relief." *Id.* at 275, 114 S.Ct. at 813 (quoting *Collins v. Harker Heights*, 503 U.S. 115, 125, 112 S.Ct. 1061, 1068, 117 L.Ed.2d 261 (1992)).

Justice Kennedy, joined by Justice Thomas, concurred with the plurality. However, Kennedy wrote separately because he believed that the root of Albright's due process claim concerned not his arrest but instead the malicious initiation of an unfounded criminal prosecution against him. *Id.* at 281, 114 S.Ct. at 816. Justice Kennedy stated that "[i]n the ordinary case where an injury has been caused not by a state law, policy, or procedure, but by a random and unauthorized act that can be remedied by state law, there is no basis for intervention under § 1983, at least in a suit based on 'the Due Process Clause of the Fourteenth Amendment *simpliciter.*'" *Id.* at 285, 114 S.Ct. at 819 (quoting *Parratt v. Taylor*, 451 U.S. 527,

536, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981)). Justice Kennedy went on to say that "Illinois provides a tort remedy for malicious prosecution; indeed, Albright brought a state-law malicious prosecution claim, albeit after the statute of limitations had expired.... Given the state remedy and the holding of *Parratt*, there is neither need nor legitimacy to invoke § 1983 in this case." *Id.* at 285–86, 114 S.Ct. at 819–20.

This Court's subsequent case of *Smart v. Board of Trustees of the University of Illinois* is also instructive. 34 F.3d 432 (7th Cir.1994). In *Smart*, we concluded that if a state actor wages a malicious prosecution which results in the arrest or some other seizure of the defendant, an infringement of liberty occurs. 34 F.3d at 434. However, from *Albright*, we gleaned that the defendant's only constitutional remedy is under the Fourth Amendment, as applied to the states by the Fourteenth Amendment, and not under the Due Process Clause directly. *Id.* (citing *Albright v. Oliver*, 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994)). In *Smart*, we reasoned:

> If liberty is not at stake, it is difficult to see how either tort [malicious prosecution or abuse of process] could be thought to invade an interest protected by the due process clause (life, liberty, property) merely by virtue of its effect on the reputation or, like any suit, the pocketbook of the defendant. Defamation is not actionable in such circumstances, because reputation is not deemed property within the meaning of the due process clause.... How torts so closely related to defamation in the interests that they invade as malicious prosecution and abuse of process could be thought to deprive a defendant of property mystifies us.

*Id.* We find this reasoning to be particularly apropos in our case.

On appeal, Spiegel does not discuss whether his claim is cognizable under § 1983. Rabinovitz mentions the issue only in a footnote. The parties instead concentrate their argu-

ments on whether Rabinovitz is absolutely immune from suit. However, from Spiegel's response to Rabinovitz's Motion to Dismiss, we get some indication of why Spiegel thinks his malicious prosecution claim is cognizable under § 1983. In his response, Spiegel alleged that his subsequent eviction, adverse employment status, and loss of income were deprivations of constitutionally-protected property interests which raised his state-law malicious prosecution claim to that of a constitutional tort. The district court found that our decision in *Albright* precluded Spiegel's employment-related claims, but it deemed Spiegel's eviction to be a "palpable consequence" of his malicious prosecution. We disagree. Although Spiegel's circumstances are unfortunate, the rationale of *Smart* instructs that none of them are deprivations of property of a constitutional magnitude.[3]

In any event, Rabinovitz is absolutely immune from suit. The determination of whether a prosecutor was acting within his quasi-judicial capacity and thus absolutely immune from suit is a legal question. *Hunt v. Jaglowski*, 926 F.2d 689, 692 (7th Cir.1991) (citation omitted). It is a matter to be decided by the trial court in light of the facts surrounding the actual conduct of the defendant. *Id.* (citation omitted). We review *de novo* the trial court's determination of immunity. *Id.* (citation omitted).

The Supreme Court has held that "in initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages...." *Imbler v. Pachtman*, 424 U.S. 409, 431, 96 S.Ct. 984, 995, 47 L.Ed.2d 128 (1976). This Court has read *Imbler* broadly:

> When determining which type of immunity a [prosecutor] enjoys, we look to the nature of the function that the [prosecutor] was performing in the particular case. If a [prosecutor's] function was quasi-judicial, the [prosecutor] enjoys absolute immunity. If the function was administrative or investigatory, the [prosecutor] enjoys only qualified immunity.

---

**3.** We also consider that, as Rabinovitz points out, on July 6, 1993, the Hollywood Towers Condominium Association ordered Spiegel to leave his apartment by July 23, 1993. However, Rabino-vitz was not assigned to investigate the unneighborly confrontation until August 4, 1993. Spiegel's notice of eviction thus could not have been a consequence of Rabinovitz's prosecution.

*Henderson v. Lopez,* 790 F.2d 44, 46 (7th Cir.1986). Under Illinois law, the State's Attorney, as a member of the executive branch of government, is vested with exclusive discretion in the initiation and management of a criminal prosecution. *Hunt,* 926 F.2d at 692 (citing *People ex rel. Daley v. Moran,* 94 Ill.2d 41, 67 Ill.Dec. 790, 792, 445 N.E.2d 270, 272 (1983)). This discretion also encompasses the determination of which charges will be brought. Id. (citing *People v. Pankey,* 94 Ill.2d 12, 67 Ill.Dec. 804, 445 N.E.2d 284, 287 (1983)).

Spiegel contends that Rabinovitz functioned as an investigator, not a prosecutor, and that therefore his actions were subject only to the qualified immunity enjoyed by police officers. *See, e.g., Buckley v. Fitzsimmons,* 509 U.S. 259, 273, 113 S.Ct. 2606, 2615, 125 L.Ed.2d 209 (1993) (stating that when a prosecutor functions as an investigator or an administrator, he is entitled only to qualified immunity). Spiegel apparently wants to have his cake and eat it, too. Spiegel has brought malicious prosecution charges against Rabinovitz in his personal capacity. Yet, Spiegel also contends that Rabinovitz is not absolutely immune from suit for these charges because he was acting as a mere investigator who would pass on his assessment of the case to his superior, who *alone* would ultimately decide whether and against whom charges should be brought. How can Spiegel charge Rabinovitz with malicious prosecution while at the same time allege that Rabinovitz was not authorized to decide whether to prosecute Spiegel?

■ Perhaps Spiegel has chosen this approach because a prosecutor is entitled to absolute immunity for his malicious prosecution of someone whom he lacked probable cause to indict. *See Buckley,* 509 U.S. at 273 n. 5, 113 S.Ct. at 2616 n. 5. We recall that in *Buckley,* the Supreme Court stated that absolute immunity must extend to "the [prosecutor's] professional evaluation of evidence assembled by the police and appropriate preparation for its presentation at trial or before a grand jury after a decision to seek an indictment has been made." *Id.* at 273, 113 S.Ct. at 2616. In this case, Rabinovitz simply evaluated the evidence assembled.

He reviewed the police records, interviewed the parties involved, and then passed on his assessment of the case to his superior. Thus, regardless of whether the decision to prosecute was a joint one or solely in the hands of Rabinovitz's superior, Rabinovitz is absolutely immune from suit.

Spiegel's case also bears some resemblance to *Hunt v. Jaglowski* 926 F.2d 689 (7th Cir. 1991). In *Hunt,* Hunt testified that he confessed and agreed to give a statement to the police. The police had already conducted their investigation before they contacted the State's Attorney's Office, the agency responsible for actually charging a defendant. We determined that the Assistant State's Attorney (ASA) was called down to the police station merely to review and approve or disapprove the actions of the police, and possibly issue the charges the police sought. *Hunt,* 926 F.2d at 693. We thus concluded that the ASA's review constituted an act toward "initiating a prosecution and in presenting the State's case." *Id.* (citing *Imbler v. Pachtman,* 424 U.S. 409, 431, 96 S.Ct. 984, 995, 47 L.Ed.2d 128 (1976)).

In this case, two complaints were brought. In response, the police conducted an investigation and wrote up reports. Rabinovitz merely reviewed these documents and interviewed the parties in order to evaluate the value of the cases involved. This is clearly not the same case as *Buckley,* where the Supreme Court found that the prosecutors were not functioning as "advocates" when they went to the scene of the crime to determine whether a boot print found there was made by the plaintiff, who was a suspect at the time. *See Buckley,* 509 U.S. at 274, 113 S.Ct. at 2616. The Court concluded that a prosecutor is not an advocate before he has probable cause to have anyone arrested. *Id.* Conversely, the district court aptly summed up Rabinovitz's role in this case when it reasoned, "Under *Buckley,* a prosecutor assumes the role of advocate, once there is probable cause for arrest. In this case, the police reports and the two complaints clearly demonstrated a probable cause for Rabinovitz to file a charge against some individual." We therefore find Rabinovitz absolutely immune from suit.

In sum, Spiegel's claim of malicious prosecution does not constitute a constitutional tort cognizable under § 1983. Even if Spiegel's claim were cognizable, Rabinovitz is entitled to absolute immunity because he functioned as a prosecutor in this case.

For the foregoing reasons, the judgment of the district court is AFFIRMED.