2024 IL App (1st) 230749

No. 1-23-0749

Second Division
July 23, 2024

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

|  |  |  |
|---|---|---|
|  | ) | Appeal from the |
| WILLIE BOWES, as Special Administrator of | ) | Circuit Court of |
| the Estate of Willie Randolph, deceased, | ) | Cook County. |
|  | ) |  |
| Plaintiff-Appellant, | ) |  |
|  | ) |  |
| v. | ) | No. 22 L 419 |
|  | ) |  |
| ANITA ALVAREZ, Individually and in Her | ) |  |
| Official Capacity as Cook County State's | ) |  |
| Attorney, and KIMBERLEY FOXX, | ) |  |
| Individually and in Her Official Capacity as | ) |  |
| Cook County State's Attorney, | ) |  |
|  | ) | Honorable |
| Defendants-Appellees. | ) | Gerald V. Cleary, |
|  | ) | Judge, Presiding. |

JUSTICE COBBS delivered the judgment of the court, with opinion.
Presiding Justice Howse and Justice Ellis concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiff-appellant Willie Bowes, as special administrator for the estate of Willie Randolph, appeals from the dismissal with prejudice, pursuant to section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2022)), by the circuit court of Cook County, of his

third amended complaint for malicious prosecution against defendants-appellees Anita Alvarez and Kimberly Foxx. In 2016, while Alvarez was Cook County State's Attorney, Willie Randolph was charged and arrested for murder. Prosecution for the offense continued after Foxx replaced Alvarez as Cook County State's Attorney. In 2021, the circuit court issued a directed verdict in Randolph's favor, and subsequently, Randolph instituted this action against Alvarez and Foxx. On appeal from the circuit court's order dismissing his complaint, plaintiff contends that the trial court erred in finding that defendants were entitled to absolute immunity where (1) defendants acted outside of their public duties and acted with malicious motives and (2) defendants failed to submit any affidavits or documentary evidence in support of their section 2-619 (*id.* § 2-619) motion to dismiss and their entitlement to immunity is not apparent on the face of the complaint. For the reasons that follow, we affirm.

¶ 2                                     I. BACKGROUND

¶ 3        On December 8, 1991, 14 year-old Cateresa Matthews was found dead in Dixmoor, Illinois, after having been missing for more than a week. Her death was caused by penetrating injuries to her skull and her body was found in a manner that suggested she had been sexually assaulted around the time of death. Five individuals, who came to be known as the "Dixmoor Five," were convicted of Matthews's murder after three of them confessed to the murder and implicated the others. Years later, in 2010, two of the individuals recanted their confessions and testimonies against the others, and the convictions of all five were eventually vacated.

¶ 4        On February 28, 2011, the court ordered DNA testing on semen that was found on the victim's body and the results showed that it belonged to Randolph, who was 33 years old at the time. According to the complaint filed in this action, Randolph had "long acknowledged that he had sex with the victim in the days or weeks before her murder."

¶ 5    In March 2016, at which time Alvarez was Cook County State's Attorney, Randolph was arrested and charged with Matthews's murder. He was held without bond while awaiting trial. On December 1, 2016, Foxx replaced Alvarez as Cook County State's Attorney.

¶ 6    Prior to trial, the State sought to admit other crimes evidence against Randolph. *People v. Randolph*, 2020 IL App (1st) 200374-U, ¶ 6. The circuit court denied the motion to admit this evidence. *Id.* ¶ 7. Subsequently, the State filed a certificate of impairment pursuant to Illinois Supreme Court Rule 604(a)(1) (eff. July 1, 2017). *Randolph*, 2020 IL App (1st) 200374-U, ¶ 8. On appeal, another panel of this court affirmed the circuit court, ruling that the court had not abused its discretion by excluding the State's evidence of Randolph's purportedly prior, similar crime. *Id.* ¶¶ 13-18. On November 30, 2021, Randolph was released from custody after the circuit court directed a verdict in his favor. By then, Randolph had spent approximately five years and eight months in jail.

¶ 7    On January 13, 2022, Randolph filed his initial complaint in the circuit court of Cook County, alleging malicious prosecution against defendants. Randolph later died while these proceedings were ongoing. On January 4, 2023, on the motion of Randolph's attorney, the circuit court granted leave to file a third amended complaint spreading Randolph's death of record and "naming WILLIE BOWES, as Special Representative for the Estate of Willie Randolph, instanter."

¶ 8    The third amended complaint contained one count of malicious prosecution against each defendant. Specifically, the complaint stated that Alvarez "had been publicly embarrassed by the release" of the Dixmoor Five in the "notorious" Matthews murder case and she was "under tremendous public pressure to prosecutor someone" for the murder, "to avoid the perception of incompetence and continuing to have 'egg on her face.' " According to the complaint, Alvarez

"unprofessionally used her office for the criminal prosecution" of Randolph "without reasonable and legal justification or cause, for the purpose of protecting her personal reputation and furthering her political career." Further, she "possessed no evidence" tying Randolph to the crime and she was well aware of Dixmoor Five's confessions to the crime and their statements that Randolph "had nothing to do with the murder" and "was not present at the time of the murder." Alvarez's "insistence on prosecuting [Randolph] despite a lack of evidence, in furtherance of her own personal and political motives, demonstrated actual malice towards [Randolph]." Finally, the complaint alleged that Randolph had suffered significant damages as a result of "the improper and malicious prosecution instituted and continued against [him]."

¶ 9    As to Foxx, the complaint alleged that when Foxx replaced Alvarez, "she too experienced the office's embarrassment as a result of the Dixmoor Five saga, and she believed her personal political career would benefit from prosecuting somebody for the notorious crime." Otherwise, the allegations against Foxx were nearly identical to those levelled against Alvarez.

¶ 10    On January 27, 2023, Alvarez filed a combined motion to dismiss the complaint pursuant to section 2-619.1 (735 ILCS 5/2-619.1 (West 2022)). Therein, Alvarez first asserted that the complaint must be dismissed under section 2-615 (*id.* § 2-615) because plaintiff failed to state a claim for malicious prosecution, where plaintiff's complaint failed to establish two of the four elements of a malicious prosecution claim, namely the absence of probable cause and the presence of malice. She also asserted that the complaint must be dismissed under section 2-619(a)(9) (*id.* § 2-619(a)(9)) because absolute prosecutorial immunity bars the action, as does sovereign immunity pursuant to the State Lawsuit Immunity Act (745 ILCS 5/1 (West 2022)).

¶ 11    On February 3, 2023, Foxx filed a similar combined motion to dismiss the complaint pursuant to section 2-619.1. Foxx's motion contained the same arguments as those in Alvarez's.

¶ 12 Plaintiff subsequently filed responses to each defendant's motion. He first argued that the complaint was sufficient to plead malicious prosecution because alleged that defendants had no evidence that plaintiff was the murderer and that malice was shown by prosecuting plaintiff for defendants' own personal and professional pursuits. As to absolute immunity, citing *Buckley v. Fitzsimmons*, 509 U.S. 259 (1993), he argued that, because defendants did not have probable cause to prosecute him, they were not entitled to absolute immunity. As to sovereign immunity, Bowes argued that defendants were not entitled to sovereign immunity because they acted in violation of statutory or constitutional law or in excess of their authority.

¶ 13 After defendants filed separate replies, the circuit court entered an order denying in part and granting in part defendants' motions to dismiss. The court rejected the argument that the court lacked subject matter jurisdiction due to sovereign immunity and also found that the complaint adequately alleged lack of probable cause and presence of malice as required for a malicious prosecution claim. However, the court ultimately granted the motions to dismiss under section 2-619(a)(9) based on prosecutorial immunity because the conduct of defendants was "intimately associated with the judicial phase of the criminal process."

¶ 14 This appeal followed.

¶ 15                           II. ANALYSIS

¶ 16 On appeal, plaintiff argues that the trial court erred in finding that defendants were entitled to absolute immunity where (1) defendants acted outside of their public duties and acted with malicious motives and (2) defendants failed to submit any affidavits or documentary evidence in support of their section 2-619 motion to dismiss and their entitlement to immunity is not apparent on the face of the complaint.

¶ 17                        A. Standard of Review

¶ 18   A motion to dismiss under section 2-619.1 of the Code allows a party to combine a section 2-615 motion to dismiss with a section 2-619 motion to dismiss. *Schloss v. Jumper*, 2014 IL App (4th) 121086, ¶ 15. A motion to dismiss brought under section 2-615 challenges the sufficiency of the complaint by alleging defects apparent on its face. 735 ILCS 5/2-615 (West 2022). A dismissal is proper under this section only when "it is clearly apparent from the pleadings that no set of facts can be proven that would entitle the plaintiff to recover." *In re Estate of Powell*, 2014 IL 115997, ¶ 12.

¶ 19   In contrast, a motion to dismiss brought under section 2-619 admits the legal sufficiency of the complaint but asserts that certain external defects or defenses defeat the claims. *Sandholm v. Kuecker*, 2012 IL 111443, ¶ 55. Such defects and defenses include a lack of subject matter jurisdiction, statute of limitations, unenforceability under the statute of frauds, and where "the claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2-619(a) (West 2022).

¶ 20   In reviewing a dismissal pursuant to either section of the Code, we accept as true all well-pleaded facts and all reasonable inferences that may be drawn from those facts and construe the allegations in the complaint in the light most favorable to the nonmoving party. *In re Estate of Powell*, 2014 IL 115997, ¶ 12. A dismissal under either section of the Code is reviewed *de novo*. *Patrick Engineering, Inc. v. City of Naperville*, 2012 IL 113148, ¶ 31.

¶ 21                    B. Malicious Prosecution

¶ 22   Before turning to defendants' assertion of absolute immunity, we briefly set forth the elements for a claim of malicious prosecution, which is the conduct alleged against both defendants in plaintiff's third amended complaint.

¶ 23   "A malicious prosecution action is a civil tort brought by a plaintiff 'for recovery of damages which have proximately resulted to person, property or reputation from a previous unsuccessful civil or criminal proceeding, which was prosecuted without probable cause and with malice.' " *Beaman v. Freesmeyer*, 2019 IL 122654, ¶ 23 (quoting *Freides v. Sani-Mode Manufacturing Co.*, 33 Ill. 2d 291, 295 (1965)). To prevail on a claim of malicious prosecution, a plaintiff must show "(1) the commencement or continuance of an original criminal or civil judicial proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) the presence of malice; and (5) damages resulting to the plaintiff." *Ritchey v. Maksin*, 71 Ill. 2d 470, 475 (1978). The absence of any one of these elements is fatal to a malicious prosecution claim. *Beaman*, 2019 IL 122654, ¶ 26. Incidentally, our supreme court has long recognized that "suits for malicious prosecution are not favored in law." *Joiner v. Benton Community Bank*, 82 Ill. 2d 40, 44 (1980).

¶ 24   In their motions to dismiss, defendants asserted that the complaint must be dismissed pursuant to section 2-619(a)(9) of the Code because it was barred by either absolute prosecutorial immunity or sovereign immunity. Defendants additionally argued that, pursuant to section 2-615 of the Code, the complaint failed to state a claim of malicious prosecution. Because the circuit court decided this case on the issue of absolute prosecutorial immunity, we begin our analysis there as well, but we note that we may affirm on any basis supported by the record. See *O'Callaghan v. Satherlie*, 2015 IL App (1st) 142152, ¶ 17 (we may affirm an order dismissing the complaint on any basis supported by the record, regardless of the trial court's reasoning). Moreover, we note that plaintiff only addresses the issue of absolute immunity on appeal.

¶ 25                    C. Absolute Prosecutorial Immunity

¶ 26 In the case at bar, defendants' assertion of absolute immunity in their motions to dismiss fall under subsection (a)(9) of section 2-619, which states "[t]hat the claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2-619(a)(9) (West 2022). As stated previously, we accept as true all well-pleaded facts and all reasonable inferences that may be drawn from those facts and construe the allegations in the complaint in the light most favorable to the nonmoving party. *In re Estate of Powell*, 2014 IL 115997, ¶ 12.

¶ 27 The doctrine of absolute prosecutorial immunity is well-established in the common law of the United States. In *Imbler v. Pachtman*, 424 U.S. 409, 422-23 (1976), the United States Supreme Court discussed the public policy supporting absolute immunity for prosecutors in initiating a prosecution, stating:

> "The common-law immunity of a prosecutor is based upon the same considerations that underlie the common-law immunities of judges and grand jurors acting within the scope of their duties. These include concern that harassment by unfounded litigation would cause a deflection of the prosecutor's energies from his public duties, and the possibility that he would shade his decisions instead of exercising the independence of judgment required by his public trust."

For several decades, the common law in Illinois has similarly recognized absolute immunity for prosecutors when acting within the scope of their prosecutorial duties. *Frank v. Garnati*, 2013 IL App (5th) 120321, ¶ 9 (citing *Coleson v. Spomer*, 31 Ill. App. 3d 563, 567 (1975)).

¶ 28 Absolute immunity for prosecutors only applies to those activities "intimately associated with the judicial phase of the criminal process." *Imbler*, 424 U.S. at 430. In considering the applicability of absolute immunity, the Supreme Court has adopted a "functional approach," which

involves an analysis of the nature of the function performed rather than the identity of the actor who performed it. *Buckley*, 509 U.S. at 269. The court should also "look to the nature of the acts performed instead of the label [parties] bestow on them." *White v. City of Chicago*, 369 Ill. App. 3d 765, 772 (2006). In particular, the Supreme Court has distinguished between the "advocate's role in evaluating evidence and interviewing witnesses as he prepares for trial" and the "detective's role in searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested." *Buckley*, 509 U.S. at 273. The latter has been described as "investigative functions normally performed by a police officer or detective." *Bianchi v. McQueen*, 2016 IL App (2d) 150646, ¶ 52. For example, the Supreme Court has held that a prosecutor's actions were not subject to absolute immunity where the prosecutor provided advice to the police prior to arrest (*Burns v. Reed*, 500 U.S. 478 (1991)) and where the prosecutor executed a certification for determination of probable cause because it constituted witness testimony (*Kalina v. Fletcher*, 522 U.S. 118, 130 (1997)). Finally, the burden is on the party seeking immunity to prove that it exists. *Buckley*, 509 U.S. at 269.

¶ 29    In support of the court's dismissal of the complaint, defendants assert that absolute prosecutorial immunity applies to their conduct in deciding and then continuing to prosecute Randolph. They further argue that plaintiff's complaint is "devoid of any allegations" and "alleged no facts" that defendants' function was investigatory in nature, either before or after Randolph was charged. Rather, they contend that the circuit court properly applied absolute immunity because they were functioning as legal advocates for the State by evaluating evidence and prosecuting Randolph based on that evidence. Specifically, Alvarez asserts that there are no allegations that Alvarez was involved in any investigation prior to Randolph's arrest and she did not play a role in the DNA testing of the semen found on the victim's body. As for Foxx, she asserts that the

complaint showed that she was not involved in Randolph's case until after his arrest and thus she clearly participated only in the judicial phase of the criminal process. Finally, both contend that, regardless of public pressure or political motivation, the decision to charge an individual, as part of the judicial phase of the criminal process, is absolutely immune.

¶ 30    In arguing that defendants were not entitled to absolute immunity, plaintiff asserts that defendants, in response to embarrassment and public pressure for their own political purposes, intentionally and wrongfully prosecuted Randolph and that they did so with malicious motives. He further contends that defendants engaged in conduct outside the scope of their official duties. In his reply brief, he also argues that defendants were clearly acting as advocates for themselves, as opposed to the State.

¶ 31    For the following reasons, we agree with defendants and conclude that absolute immunity is applicable to their conduct as alleged in plaintiff's complaint.

¶ 32    After reviewing the record, we find that the allegations in the third amended complaint do not assert that either defendant was involved in pre-judicial investigatory functions in Randolph's criminal case. The allegations consist of the following: Alvarez "was under tremendous public pressure to prosecute someone for the murder" and "to avoid the perception of incompetence and continuing to have 'egg on her face' "; Alvarez "attempted to make a case" against Randolph "[i]n response to the embarrassment and public pressure"; Foxx also experienced "embarrassment as a result of the Dixmoor Five saga" and "her personal political career would benefit from prosecuting somebody for the notorious crime"; defendants "unprofessionally" used their office to prosecute, or continue to prosecute, Randolph "without reasonable and legal justification or cause"; defendants "possessed no evidence" tying Randolph to the victim aside from the presence of his semen; and defendants provided "scant evidence" to the court "in the form of stipulations that

witnesses would testify consistently with certain transcripts." These allegations are amorphous and are largely devoid of any specific, tangible actions taken by defendants. As far as tangible actions are concerned, we read these allegations to only implicate defendants' decision to prosecute Randolph and defendants' presentation of evidence gathered to the court. Such actions are quintessential functions of the judicial process, not the investigatory process. See *Imbler*, 424 U.S. at 431 n.33 (The immunity incudes "whether and when to prosecute."); *Buckley*, 509 U.S. at 273 (Immune conduct "must include the professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial or before a grand jury after a decision to seek an indictment has been made.").

¶ 33    Plaintiff reiterates in his reply that defendants "acted outside of their public duties" by using their office for the criminal prosecution of Randolph "in order to further their own personal and political career and reputation." However, plaintiff's argument lacks any specific action or conduct on the part of defendants outside of pursuing a prosecution against Randolph for the murder of Matthews. As we read it, plaintiff's arguments are merely suggestive of an improper motive on the part of the defendants. Even were we to agree with plaintiff's suggestion, and we hasten to add that we do not, a prosecutor's motives, in determining absolute immunity, are "irrelevant" to the court's analysis where the prosecutor's acts are associated with the judicial phase of the criminal process. (Internal quotation marks omitted.) *Jones v. Cummings*, 998 F.3d 782, 788 (7th Cir. 2021). Rather, as stated previously, the question is what role or function the prosecutor played in the criminal process.

¶ 34    Here, it is clear that neither defendant played an investigatory role in the prosecution of Randolph. Neither was involved in the DNA testing of the semen found on the victim, nor any other investigative act that took place prior to Randolph's arrest, and plaintiff does not allege that

they were. In fact, Foxx did not become involved until long after the investigation had concluded and Randolph had been arrested. Their functions, as alleged in the complaint, were limited to assessing the evidence, deciding to prosecute or continuing to prosecute Randolph for the murder, and presenting the evidence, "scant" as it may have been, to the court. As we have already made clear, the Supreme Court has repeatedly held that the evaluation of evidence, decision to prosecute, and presentation of evidence are exactly the type of acts that absolute immunity is intended to shield. See *Imbler*, 424 U.S. at 431 n.33 (The immunity incudes "whether and when to prosecute."); *Buckley*, 509 U.S. at 273 (Immune conduct "must include the professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial or before a grand jury after a decision to seek an indictment has been made."). Thus, regardless of defendants' motives, it appears from the pleadings that both were acting as advocates for the State during the judicial phase of Randolph's criminal case, and we must conclude that plaintiff's claims of malicious prosecution are barred by absolute immunity for both defendants.

¶ 35    Nonetheless, plaintiff asserts that defendants "engaged in *investigatory functions* by *searching for the clues and corroboration that might give probable cause*" and "manufactured a false story in order to *create* probable cause" (emphases in original), and he contends that he made these precise allegations in his third amended complaint. However, despite our thorough review of the third amended complaint, we can find no such allegations. Moreover, plaintiff's characterization of his allegations against defendants as "investigative" does not make them so. See *White*, 369 Ill. App. 3d at 772 (stating that courts must "look to the nature of the acts performed instead of the label [parties] bestow on them"). As such, we disagree with plaintiff that he alleged in his complaint that defendants were involved in any investigatory functions in order to tie Randolph to the murder.

¶ 36 Plaintiff attempts to compare this case to that of *Buckley*. However, plaintiff misconstrues the import of *Buckley*. In that case, the plaintiff, who was previously charged with murder, alleged in his complaint that the prosecutors conspired with detectives to manufacture false evidence that linked his boot with a boot print found at the crime scene. *Buckley*, 509 U.S. at 262, 272. The Supreme Court held that the prosecutors were not entitled to absolute immunity because they were not functioning as advocates for the State when they fabricated the false boot print. *Id.* at 274. According to the Court, at that point, the prosecutors' mission was entirely investigative because they did not have probable cause to arrest the plaintiff until the false evidence was manufactured. *Id.* In so concluding, the Court looked specifically at the allegations regarding "conduct of the prosecutors during the period before they convened a special grand jury to investigate the crime." *Id.*

¶ 37 According to plaintiff, *Buckley* stands for the proposition that a prosecutor's conduct is not subject to absolute immunity whenever there is insufficient probable cause for an arrest, and in his view, at no point did defendants have probable cause to support Randolph's arrest or prosecution. We disagree with this interpretation. Rather, the Court held that the prosecutors were performing an investigatory function by fabricating evidence "during the early stages of the investigation" prior to the plaintiff's indictment and arrest. *Id.* at 262-63. It was not the alleged lack of probable cause that rendered the prosecutors' conduct subject to liability, but the nature of their conduct where "police officers and assistant prosecutors were performing essentially the same investigatory functions." *Id.* In contrast to *Buckley*, here, regardless of whether there was or was not sufficient probable cause to arrest Randolph, there are no allegations that defendants were performing investigatory functions prior to Randolph's arrest. In fact, the *Buckley* Court stated that prosecutors are absolutely immune "for the malicious prosecution of someone whom [they] lacked

probable cause to indict." *Id.* at 274 n.5. Therefore, plaintiff's allegation of a lack of probable cause at the time of Randolph's arrest and while Randolph was awaiting trial does not defeat defendants' absolute immunity. See *Weimann v. County of Kane*, 150 Ill. App. 3d 962, 965-66 (1986) (individuals arrested pursuant to a lawful warrant based on probable cause have "no constitutional right to periodic hearings to determine whether there remains probable cause to detain him while awaiting trial"). As an aside, we would note that plaintiff's allegation that there was no probable cause to prosecute Randolph is not a foregone conclusion, but we see no need to dissect that issue here where it has no bearing on the outcome.

¶ 38    *Bianchi*, 2016 IL App (2d) 150646, and *Fields v. Wharrie*, 740 F.3d 1107 (7th Cir. 2014), which plaintiff also cites for support, are also distinguishable. In *Bianchi*, the plaintiff alleged that the prosecutor fabricated evidence in the absence of probable cause, prior to the convening of the grand jury, and therefore, the second district of this court found that the prosecutor's "mission was entirely investigative." *Bianchi*, 2016 IL App (2d) 150646, ¶¶ 53-56. Similarly, in *Fields*, the Seventh Circuit found that immunity did not apply to the prosecutor's alleged pre-arrest procurement of false statements during the investigation. *Fields*, 740 F.3d at 1111, 1113. Neither of these cases is analogous to the one before this court where plaintiff's complaint contains no allegations of fabricated evidence nor coercion of false testimony, and none of the allegations cite to conduct occurring prior to Randolph's arrest. Notably, the Seventh Circuit in *Fields* held that immunity *did* apply to the prosecutor's alleged post-arrest coercion of false testimony during the preparation for retrial, as that conduct took place during the judicial phase of the criminal process. *Id.* at 1116.

¶ 39    Instead, we find *Spiegel v. Rabinovitz*, 121 F.3d 251 (7th Cir. 1997), persuasive. There, a physical altercation took place amongst neighbors, including the plaintiff, resulting in the filing of

opposing criminal complaints. *Id.* at 253. After the police conducted its investigation and the prosecutor evaluated the reports, the prosecutor decided to pursue criminal charges against the plaintiff. *Id.* Later, the plaintiff was acquitted. *Id.* The plaintiff alleged that the prosecutor "conducted a willfully incomplete and inadequate assessment of the case" and specifically, the prosecutor overlooked witnesses, ignored the falsification of evidence, and was biased against him. *Id.* at 254. Based on these allegations, the plaintiff asserted that the prosecutor was functioning as an investigator, specifically where the prosecutor passed on his assessment to his superior. *Id.* at 257. The Seventh Circuit Court of Appeals rejected the plaintiff's argument, finding instead that the prosecutor "simply evaluated the evidence assembled" and for that conduct, he was "absolutely immune from suit." *Id.* Likewise here, defendants only evaluated the evidence assembled in the murder case and decided to pursue, and continue pursuing, a prosecution against Randolph based on that evaluation.

¶ 40    Additionally, we point out that the court in *Spiegel*, in finding that the prosecutor was absolutely immune, correctly applied *Buckley*, stating that "a prosecutor is entitled to absolute immunity for his malicious prosecution of someone whom he lacked probable cause to indict." *Id.* (citing *Buckley*, 509 U.S. at 273 n.5). Accordingly, the court found that the prosecutor's evaluation of the evidence assembled and his subsequent decision or recommendation to prosecute the plaintiff was absolutely immune. *Id.* Similarly, here, even if defendants did not have sufficient probable cause to pursue the prosecution against Randolph, their conduct was entitled to absolute immunity. See *Hampton v. City of Chicago*, 349 F. Supp. 2d 1075, 1081 (N.D. Ill. 2004) (where a felony review prosecutor was entitled to absolute immunity when he interviewed witnesses, determined the pertinent information for trial, and approved charges against the plaintiff); *People v. Patrick J. Gorman Consultants, Inc.*, 111 Ill. App. 3d 729, 732 (1982) (improperly prosecuting

and continuing to prosecute a case were quasi-judicial functions protected by absolute immunity); *White*, 369 Ill. App. 3d at 775-76 (the prosecutor was absolutely immune for directing the investigations post-arrest and indictment and allowing the plaintiffs to remain in custody).

¶ 41 Further, our outcome is supported by public policy justifications underlying the immunity doctrine, which include "both the interest in protecting the prosecutor from harassing litigation that would divert [their] time and attention from [their] official duties and the interest in enabling [them] to exercise independent judgment when deciding which prosecutions to bring." *Frank*, 2013 IL App (5th) 120321, ¶ 20 (citing *Kalina*, 522 U.S. at 125). Both purposes are served by granting absolute immunity to defendants under the circumstances before this court. See *id.* (stating that the public policy considerations "outweigh the concerns of the plaintiff").

¶ 42 As a final matter, plaintiff contends that defendants were required to submit affidavits or other documentary evidence to support their affirmative defense because absolute immunity is not apparent on the face of the third amended complaint. However, this argument was not included in his response before the circuit court and therefore cannot be raised for the first time on appeal here. See *Illinois Tool Works, Inc. v. Independent Machine Corp.*, 345 Ill. App. 3d 645, 652 (2003) (noting that "it has long been held that arguments not raised in the trial court are considered waived on appeal"). Forfeiture aside, we nonetheless find the argument meritless.

¶ 43 Initially, plaintiff first cites *Tracy v. Duke*, 2017 IL App (5th) 150470-U, for support of his argument that immunity was not apparent from the complaint. However, as defendants point out, that case is not permitted to be cited pursuant to Illinois Supreme Court Rule 23(e)(1) (eff. Feb. 1, 2023). Recognizing the citation error, in his reply brief, plaintiff cites instead *Roe v. Board of Education of Community High School District 99*, 2024 IL App (3d) 220377-U. In *Roe*, the plaintiff sued the school district in relation to allegations of sexual abuse involving a teacher, and

the school district sought dismissal of the plaintiff's complaint under section 2-619(a)(9), asserting that it was immune from liability. Notably, *Roe* does not involve absolute prosecutorial immunity. Plaintiff's reliance on *Roe* is solely for the proposition that dismissal of a complaint is not warranted "[w]here facts necessary to sustain the *** affirmative defense are not apparent on the face of the complaint and not supported by affidavits or other materials in the record." *Id.* ¶ 33.

¶ 44 We do not disagree with the holding of *Roe*. However, the holding in *Roe* does not aid plaintiff's cause. Here, plaintiff's complaint did not allege any investigatory activities undertaken by defendants when they prosecuted and continued to prosecute Randolph based on the evidence already obtained. Thus, immunity *is* apparent on the face of the third amended complaint. We therefore reject plaintiff's argument that defendants needed to provide the circuit court with additional documentary evidence to support a finding of absolute immunity.

¶ 45 Accordingly, the circuit court correctly held that plaintiff's claims of malicious prosecution against defendants are barred by absolute prosecutorial immunity and plaintiff's third amended complaint was properly dismissed with prejudice pursuant to section 2-619(a)(9) of the Code.

¶ 46                                    III. CONCLUSION

¶ 47 For the reasons stated, we affirm the judgment of the circuit court.

¶ 48 Affirmed.

---

***Bowes v. Alvarez*, 2024 IL App (1st) 230749**

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 22-L-419; the Hon. Gerald V. Cleary, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Jeffrey S. Deutschman, of Deutschman & Skafish, P.C., of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Eileen E. Rosen, Theresa B. Carney, and Austin G. Rahe, of Rock, Fusco & Connelly LLC, of Chicago, for appellee Anita Alvarez. |
| | Kwame Raoul, Attorney General, of Chicago (Jane Elinor Notz, Solicitor General, and Christopher M.R. Turner, Assistant Attorney General, of counsel), for other appellee. |

---