**Winston I. SMART, Plaintiff–Appellant,**

v.

**BOARD OF TRUSTEES OF the UNIVERSITY OF ILLINOIS, et al., Defendants–Appellees.**

Nos. 93–3137, 93–3176.

United States Court of Appeals, Seventh Circuit.

Submitted July 14, 1994.

Decided Aug. 29, 1994.

Winston I. Smart, pro se.

Steven C. Daily, John L. Conlon, Greenberger, Krauss & Tennenbaum, Chicago, IL, and Charles Palmer, Flynn, Palmer, Tague & Lietz, Champaign, IL, for defendants-appellees.

Before POSNER, Chief Judge, and EASTERBROOK and KANNE, Circuit Judges.

POSNER, Chief Judge.

The plaintiff has appealed from the denial of his motion for a preliminary injunction that would if granted have prevented the University of Illinois from funding a suit for defamation that has been brought against him by several professors employed by the university. That suit, a diversity suit pending in the same district court, was stayed on the eve of trial to await the outcome of the appeal in the present suit, which was brought under 42 U.S.C. § 1983 and charges that the university—a state agency, *Kroll v. Board of Trustees*, 934 F.2d 904 (7th Cir.1991)—by funding the defamation suit of its professors has infringed the plaintiff's freedom of speech.

The plaintiff, Smart, is a black lawyer who applied for a position with the university as an assistant professor of agricultural law and was turned down in favor of a white, Purnell. Smart responded to this disappointment by launching a nationwide mail campaign against the university and the professors whom he considered responsible for his rejection. He prepared an affidavit charging racial discrimination and fraud and mailed more than 1,500 copies to public officials, lawyers and others involved in agricultural law, the news media, bar organizations, and other individuals and groups. Among the particulars of the charge is that Professor Grossman, co-chairman of the search committee that had recommended Purnell over him, had altered Purnell's law school transcript by changing two F's to passing grades, in order to make Purnell look better. These accusations precipitated the suit for defamation by Purnell, Grossman, and others. The university is defraying the plaintiffs' legal

expenses. Originally a plaintiff itself, later it voluntarily dismissed its claim.

Smart argues that by funding the suit for defamation the university is penalizing him for having exercised his right of free speech in accusing the university of fraud and discrimination. He does not live in Illinois, and he claims to have no resources with which to defend himself against the suit. He claims that his health will be endangered if he has to defend himself, and this is one of the grounds on which he argues that he will be harmed irreparably unless he gets a preliminary injunction.

■■■ We do not think the district judge abused his discretion in denying the motion for a preliminary injunction. This is so even though the idea behind Mr. Smart's suit, although somewhat far-fetched, cannot at this stage be declared wholly groundless. It is true that within the limits prescribed by the Supreme Court in the line of cases that began with *New York Times Co. v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), defamation is not constitutionally protected. So if Smart loses the defamation suit, he will have very little basis for complaint, either against the plaintiffs in that suit or against their financial angel, the university. Cf. *NLRB v. Mini–Togs, Inc.,* 980 F.2d 1027, 1033–34 (5th Cir.1993). Little basis, but perhaps not none. Malicious prosecution is the bringing of a suit known to be groundless, while abuse of process is the bringing of a suit that may, like the professors' defamation suit against Smart, have a solid grounding in law but that the plaintiff has filed not in order to vindicate his legal rights and obtain a judgment but in order to harass the defendant. *In re Hendrix,* 986 F.2d 195, 201 (7th Cir.1993); W. Page Keeton *et al., Prosser and Keeton on the Law of Torts* § 121, p. 897 (5th ed. 1984). If malicious prosecution or abuse of process is committed by state actors and results in the arrest or other seizure of the defendant, there is an infringement of liberty, but we now know that the defendant's only constitutional remedy is under the Fourth Amendment (as made applicable to the states by the Fourteenth), and not under the due process clause directly. *Albright v. Oliver,* —— U.S. ——, 114 S.Ct.

807, 127 L.Ed.2d 114 (1994). If liberty is not at stake, it is difficult to see how either tort could be thought to invade an interest protected by the due process clause (life, liberty, or property) merely by virtue of its effect on the reputation or, like any suit, the pocketbook of the defendant. Defamation is not actionable in such circumstances, because reputation is not deemed property within the meaning of the due process clause. *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). How torts so closely related to defamation in the interests that they invade as malicious prosecution and abuse of process could be thought to deprive a defendant of property mystifies us.

■■■ However that may be, Smart's argument is not that he has been deprived of property; it is that by bringing a defamation suit that he claims is malicious and abusive the defendants have infringed his freedom of speech, one of the forms of liberty protected by the Fourteenth Amendment. Any form of official retaliation for exercising one's freedom of speech is actionable as an infringement of that freedom. Many officials have enforcement powers, and legal harassment including but not limited to threats to prosecute and actual prosecutions has frequently been charged as an infringement of free speech. E.g., *Dombrowski v. Pfister,* 380 U.S. 479, 487, 85 S.Ct. 1116, 1121, 14 L.Ed.2d 22 (1965); *Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978); *Rakovich v. Wade,* 850 F.2d 1180 (7th Cir.1988) (en banc); *Sloman v. Tadlock,* 21 F.3d 1462, 1469–70 (9th Cir.1994); *Lewellen v. Raff,* 843 F.2d 1103, 1109–10 (8th Cir.1988); *Fitzgerald v. Peek,* 636 F.2d 943 (5th Cir.1981) (per curiam); *Wilson v. Thompson,* 593 F.2d 1375 (5th Cir.1979). What is true about defamation—that it is not actionable as such under the Constitution, but that it is actionable when used by public officials to punish a person for expressing his views, *Little v. City of North Miami,* 805 F.2d 962, 967–68 (11th Cir.1986) (per curiam)—is true of defamation suits as well. The defamation suit in *New York Times Co. v. Sullivan* was a form of harassment for speaking, and the limitations that the Supreme Court in that decision placed on defamation suits by public officials

are in the nature of safeguards against harassment. It is conceivable that a suit which complied with those safeguards yet had been instituted not to get a judgment but to harass the plaintiff for his temerity in criticizing a public official could be found to be an unconstitutional abuse of process. Malicious prosecution has been held to be a form of harassment of which a plaintiff can complain on First Amendment grounds, *Johnson v. Louisiana Dept. of Agriculture*, 18 F.3d 318, 320 (5th Cir.1994), and abuse of process is invariably bracketed with malicious prosecution.

■ If, therefore, a public body such as the University of Illinois brings or finances a suit for defamation not to win but to punish the defendant for criticizing the agency or its employees, it is at least arguable that this conduct could be found to violate the defendant's constitutional rights. And if it would violate the Constitution for the university to harass Smart directly with groundless suits, it must violate the Constitution for the university to harass him indirectly by instigating or financing groundless suits brought by others—others who in this case, if Smart can be believed, are merely the university's tools.

■ But of this arguably unlawful motive the plaintiff has presented not a shred of evidence, so that the likelihood of his actually prevailing on his constitutional claim must be reckoned, at this stage of the litigation and on this record, slight. This alone probably disentitled him to a preliminary injunction. *Storck U.S.A., L.P. v. Farley Candy Co.*, 14 F.3d 311, 314–15 (7th Cir.1994); *Abbott Laboratories v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir.1992); *Ping v. National Education Ass'n*, 870 F.2d 1369, 1371–75 (7th Cir.1989). At the very least it required him to show that he would suffer irreparable harm from the denial of the injunction that was greatly disproportionate to the irreparable harm to the defendant from the grant of the injunction. He has shown no irreparable harm. The expense of defending against the suit is eminently reparable by an award of damages for abuse of process, if that is what the defamation suit should prove to be, and it therefore cannot be made the basis for a preliminary injunction. *Classic Components*

*Supply, Inc. v. Mitsubishi Electronics America, Inc.*, 841 F.2d 163 (7th Cir.1988). If Smart were arguing that the effect of the suit has been to gag him, he would be on stronger ground, see, e.g., *Bailey v. Systems Innovation, Inc.*, 852 F.2d 93, 96–97 (3d Cir. 1988); *International Products Corp. v. Koons*, 325 F.2d 403, 406 (2d Cir.1963) (Friendly, J.), for the harm to the marketplace in ideas and opinions would not be fully repaired by an award of damages for him. But he does not make that argument. He does argue that his mental health is imperiled by the suit, but we would require much more evidence than the say-so of the litigant to give credence to such a claim. It would open the door to routinely seeking to enjoin legal proceedings; yet the circumstances in which such injunctions are entered are in fact rare. See, e.g., *Asset Allocation & Management Co. v. Western Employers Ins. Co.*, 892 F.2d 566, 571–73 (7th Cir.1989).

Even if Smart had shown that the defamation suit will unless enjoined impose irreparable harm on him, he has presented no evidence that *the university's funding of the suit* —which is what he wants to enjoin—will do so, for he has presented no evidence that the defamation suit will fold if the university stops funding it. Since Mr. Smart appears to have no assets, it is unlikely that the plaintiffs in that suit can retain lawyers to handle it on a contingent-fee basis, and they may be unwilling or even unable to finance it out of their own pockets. But this is speculation; Smart has presented, as we have said, no evidence. It is true that he is proceeding pro se; but he is a lawyer and his briefs are competent professional products, so that his failure to present persuasive evidence either of irreparable harm to himself or of improper motive on the part of the university cannot be ascribed to a lay person's understandable ignorance of legal technicalities. We add that the irreparable harm to the university from the grant of a preliminary injunction in this case would not be slight. Smart made and widely publicized damning charges against the university; if they are false, the university has a right to take actions to save its reputation and might be gravely harmed

if forbidden even temporarily by an injunction to do so.

■ Although Smart's lawsuit cannot be adjudged frivolous, his appeal is frivolous because he has made no effort to show that he satisfied the requirements for obtaining a preliminary injunction in the district court. He presented no evidence of improper motive by the university, the linchpin of his constitutional claim; and he failed to establish irreparable harm, which hinges as we have said on whether the plaintiffs in the defamation suit would dismiss the suit were .it not for the university's financial backing. As a lawyer, Smart cannot be forgiven these oversights. We direct him to file with the court within fourteen days a statement as to why sanctions should not be imposed under Fed.R.App.P. 38. His own motion for sanctions is frivolous and is denied, and the district court's denial of his motion for a preliminary injunction is

AFFIRMED.