**Pantelis ZISIS, Plaintiff,**

v.

**ST. JOSEPH TOWNSHIP OF ALLEN COUNTY and Richard G. Uhrick, Trustee of St. Joseph Township, Individually and in his Official Capacity, Defendants.**

No. 1:96–CV–183.

United States District Court,
N.D. Indiana,
Fort Wayne Division.

Aug. 25, 1997.

Christopher C. Myers, Myers and Geisleman, Fort Wayne, IN, Robert R. Thomas, Indianapolis, IN, for Pantelis Zisis.

Pantelis Zisis, Fort Wayne, IN, pro se.

Diana C. Bauer, Robert T. Keen, Jr., Miller Carson Boxberger and Murphy, Fort Wayne, IN, for St. Joseph Tp. of Allen County, Richard G. Uhrick.

J. Timothy McCaulay, Helmke Beams Boyer and Wagner, Fort Wayne, IN, for Harold E. West, Joseph Squadrito.

## ORDER

WILLIAM C. LEE, Chief Judge.

This matter is before the court on the Motion for Summary Judgment filed by the Defendants St. Joseph Township and Richard Uhrick [1] on February 27, 1997. Plaintiff was granted several extensions of time in which to file a response, including one to allow him to obtain new counsel after his original attorney filed a motion to withdraw.

---

1. At the time the Motion for Summary Judgment was filed, Harold West and Joseph Squadrito were also named as Defendants. On May 19, 1997, a stipulation of dismissal was filed as to those two Defendants.

Zisis did obtain new counsel and a response was filed on July 7, 1997. Defendants filed a reply on July 21, 1997. For the following reasons, the Motion for Summary Judgment is GRANTED.

## STATEMENT OF FACTS

The facts of this case reveal that Plaintiff Pantelis Zisis was the victim of a terribly unfortunate chain of events. In 1991 Zisis applied to the St. Joseph Township Trustee's Office for relief benefits. Zisis was seeking assistance to help pay his mortgage and utility bills. The Township and Uhrick, as Township Trustee, had the authority to provide such assistance to individuals residing within the Township. Pursuant to the Township's policies, Zisis was required to renew his application for benefits every six months. Zisis did submit applications for assistance in March of 1992 and September of 1992. On both of those applications, Zisis represented that he was unemployed and was not receiving Social Security benefits or Supplemental Security Income. In September or October of 1992, Jerry Wulliman, an employee with the Township Office, recommended to Zisis that he apply for Supplemental Security Income benefits from the Social Security administration. On October 28, 1992, Zisis did in fact apply for both Supplemental Security Income benefits and Social Security disability benefits. However, Zisis was denied benefits.[2] In April of 1993, Zisis submitted another application for benefits from the Township, again seeking assistance with his mortgage payment and utility bills. On that application, Zisis represented that he was still unemployed, that he had no income, and that he had applied for Social Security benefits but was not receiving any such benefits. Sometime in late 1993, an investigator employed by the Township, Karen Berggoetz, decided to check the status of any Social Security benefits that Zisis might have been receiving, since the Township would have been entitled to a reimbursement of the assistance it had provided to Zisis. On December 21, 1993, the Township received a computerized printout from the Social Security Administration office in Indianapolis, Indiana. That printout indicated that Social Security benefits were credited to Zisis as of December 1992. Berggoetz wanted additional information and directed her secretary, Betty Wulliman, to contact the Social Security Administration to find out precisely when Zisis began receiving benefits. On January 5, 1994, the Township received a letter from the same Indianapolis office of the Social Security Administration. The letter stated that Zisis had received a lump sum payment of $6,370.00 in May of 1992, that he had received monthly benefits of $656.00 from February through December of 1992, and that he would continue to receive monthly benefits in 1993 and 1994. Individuals are not entitled to receive assistance from the Township if they are receiving assistance from other sources, such as the Social Security Administration. After seeing the information from the Social Security Administration, Uhrick contacted Mark GiaQuinta, an attorney who represented the Township. At a meeting on February 8, 1994, GiaQuinta, after reviewing the information, advised Uhrick that the Township could file a state civil action against Zisis in an attempt to obtain restitution of the benefits it had paid to Zisis. GiaQuinta also advised Uhrick that the Township could not file criminal charges against Zisis. A civil action was filed against Zisis in Allen County Superior Court on June 24, 1994. On February 14, 1994, GiaQuinta met with Allen County Sheriff Joseph Squadrito and provided the Sheriff with the documentation the Township had received from the Social Security Administration. The Sheriff presented the matter to the Allen County Prosecutor's Office and the Prosecutor filed criminal charges against Zisis on August 23, 1994. Also on August 23, 1994, Robert Eherenman, an attorney in GiaQuinta's office, received a letter from Anthony Thomas, an attorney with Legal Services of Maumee Valley, Inc., stating that Zisis did not actually begin receiving any Social Security bene-

---

**2.** Also in late October of 1992, Trustee Uhrick denied mortgage assistance to Zisis after Zisis refused to sign a Mortgage Indemnification agreement. In November of 1992, Zisis filed suit in state court to compel the payment of mortgage assistance. The Allen Superior Court granted summary judgment in favor of Zisis and the Township subsequently paid the assistance.

fits until May of 1993. On August 24, 1994, Eherenman received a second letter from Thomas further clarifying the Social Security benefits matter. Eherenman contacted Berggoetz and advised her that, based on the information received from Thomas, the lawsuit against Zisis should be dismissed. Eherenman gave the same advice to Uhrick in a letter written on August 26, 1994. Uhrick agreed to dismiss the suit and it was indeed dismissed with prejudice on September 1, 1994. If the entire matter had ended at that point, this present suit may never have sprung into existence. However, on September 12, 1994, two Allen County Sheriff's Deputies arrested Zisis at his residence and informed him that they had a warrant for his arrest on charges of welfare fraud. The criminal case against Zisis was, of course, also subsequently dismissed. Understandably angry and humiliated by the entire experience, Zisis filed suit in state court against the Township, Uhrick, West and Squadrito on April 9 1996. Zisis is asserting both false arrest and malicious prosecution claims under 42 U.S.C. § 1983. The Complaint also asserts a state law cause of action for malicious prosecution.[3] On May 7, 1996, Defendants filed a Notice of Removal to bring the action to this court. Briefing having been completed,[4] this matter is now ripe for resolution.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). However, Rule 56(c) is not a requirement that the moving party negate his opponent's claim. *Fitzpatrick v. Catholic Bishop of Chicago,* 916 F.2d 1254, 1256 (7th Cir.1990). Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The standard for granting summary judgment mirrors the directed verdict standard under Rule 50(a), which requires the court to grant a directed verdict where there can be but one reasonable conclusion. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). A scintilla of evidence in support of the non-moving party's position is not sufficient to successfully oppose summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252, 106 S.Ct. at 2512; *In Re Matter of Wildman,* 859 F.2d 553, 557 (7th Cir.1988); *Klein v. Ryan,* 847 F.2d 368, 374 (7th Cir.1988); *Valentine v. Joliet Township High Sch. Dist. No. 204,* 802 F.2d 981, 986 (7th Cir.1986). No genuine issue for trial exists "where the record as a whole could not lead a rational trier of fact to find for the nonmoving party." *Juarez v. Ameritech Mobile Communications, Inc.,* 957 F.2d 317, 322 (7th Cir.1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

Initially, Rule 56 requires the moving party to inform the court of the basis for the motion, and to identify those portions of the "pleadings, depositions, answers to interroga-

---

**3.** In addition, Zisis claims in his response brief that he is "also alleg[ing] a state-law claim for defamation against Trustee Uhrick in his individual and official capacities." *Plaintiff's Response,* p. 1. The court agrees with the Defendants, who argue in their reply brief that the Complaint does not state a claim for defamation. Nonetheless, as Defendants address such a claim in their reply brief, the court also addresses it later in this Order.

**4.** In addition to the Motion for Summary Judgment, Defendants also filed, on July 21, 1997, a

Motion to Strike the Affidavit of Douglas K. Mawhorr. Said affidavit was filed by Zisis along with his response to the Motion for Summary Judgment. Briefing on this motion was completed on August 12, 1997. Defendants argue that Mawhorr was never disclosed as a witness by Zisis pursuant to Fed.R.Civ.P. 26(a). However, the affidavit does not defeat the Defendants' defenses and so whether or not it is considered it does not change the court's analysis, as will be discussed below. Consequently, the Motion to Strike is DENIED.

tories, and admissions on file, together with the affidavits, if any, which demonstrate the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553. The non-moving party may oppose the motion with any of the evidentiary materials listed in Rule 56(c), but reliance on the pleadings alone is not sufficient to withstand summary judgment. *Goka v. Bobbitt,* 862 F.2d 646, 649 (7th Cir.1988); *Guenin v. Sendra Corp.,* 700 F.Supp. 973, 974 (N.D.Ind.1988); *Posey v. Skyline Corp.,* 702 F.2d 102, 105 (7th Cir.), *cert. denied,* 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983). In ruling on a summary judgment motion the court accepts as true the non-moving party's evidence, draws all legitimate inferences in favor of the non-moving party, and does not weigh the evidence or the credibility of witnesses. *Anderson,* 477 U.S. at 249–251, 106 S.Ct. at 2511.

## DISCUSSION

In their briefs in support of their Motion for Summary Judgment, Uhrick and the Township assert several defenses to the claims asserted by Zisis. The response brief filed by Zisis is only eight pages long, with only four of those pages devoted to legal argument. In that response, Zisis addresses only his defamation claim and his claim for malicious prosecution based on the underlying criminal proceedings. While Defendants infer that this indicates concession by Zisis on several points (See Defendants' Reply, p. 1), the court will not assume such concession since it is not expressly stated. Rather, the court will analyze each of the claims asserted by Zisis.

### 1. Claims against the Township Trustee's Office

 Zisis sued Uhrick in both his individual and official capacities. Complaint, p. 1. It is well established that a § 1983 action against a governmental official in his official capacity is a suit against the governmental entity itself. *Monell v. Department of Social*

*Services,* 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 2035 n. 55, 56 L.Ed.2d 611 (1978). Local governmental entities cannot be held liable under the doctrine of *respondeat superior. Id.* Such an entity can only be held liable under § 1983 if the alleged constitutional violation was the result of a policy or custom of the entity. *Id.;* Zisis presents no evidence whatsoever that the Township had in place any policy or custom that resulted in the deprivation of constitutional rights of individuals applying for assistance benefits. In fact, Zisis admitted in his deposition that he did not know of any other cases where the Township had filed suit against any other person whom it believed had taken assistance payments to which they were not entitled. Motion for Summary Judgment, Exh. 1, Zisis Depo., pp. 65–66. Defendants argue that "[a]t most, Zisis' experience is an isolated incident. Courts have routinely held that isolated incidents of alleged misconduct by a governmental employee or governmental official, are insufficient, as a matter of law, to raise an inference as to the existence of a custom for purposes of establishing municipal liability." Defendants' Memorandum, pp. 21–22 (citing *Caldwell v. City of Elwood, Indiana,* 959 F.2d 670, 673 (7th Cir.1992) and *Henry v. Farmer City State Bank,* 808 F.2d 1228, 1237 (7th Cir.1986)). For these reasons, the Township is entitled to summary judgment in its favor on all of Zisis' § 1983 claims. All that really need be done at this point is to address Zisis' § 1983 claims against Uhrick individually. However, to the extent that the Township could be deemed *to be liable under § 1983,*[5] summary judgment is still proper for the same reasons it is proper as to Uhrick individually (namely the fact that Zisis is unable to establish that the Township or Uhrick is liable for any constitutional violation that may have occurred).

### 2. Malicious Prosecution Claim Under § 1983 Based on Underlying Civil Proceedings

Defendants argue that this claim by Zisis is simply not cognizable under § 1983. They

---

5. Zisis, for example, states that the Township may be liable since such an entity could possibly be liable under § 1983 of the act which results in the deprivation of a constitutional right is made by a person with policy-making authority. Plaintiff's Response, pp. 7–8 (citing *Pembaur v. City of*

*Cincinnati,* 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986)). The court need not engage in a discussion of this doctrine, however, as Zisis' claims must fail for the many reasons set forth in this Order.

argue that a § 1983 malicious prosecution claim can only be based on an underlying *criminal* prosecution and not on a civil proceeding. *Defendants' Memorandum, p.* 11. In support of their positions, Defendants cite the case of *Smart v. Board of Trustees of the University of Illinois,* 34 F.3d 432 (7th Cir. 1994). In *Smart,* the Seventh Circuit held that "[i]f malicious prosecution or abuse of process is committed by state actors *and results in the arrest or other seizure of the defendant,* there is an infringement of liberty" and a constitutional violation may have occurred. *Id.* at 434 (italics added). The court further stated that "[i]f liberty is not at stake, it is difficult to see how either tort could be thought to invade an interest protected by the due process clause (life, liberty, or property) merely by virtue of its effect on the reputation or, like any suit, the pocketbook of the defendant." *Id.* Defendants also quote the case of *McMaster v. Cabinet for Human Resources,* 824 F.2d 518, 522 (6th Cir.1987), wherein the Sixth Circuit wrote that "courts that have recognized that malicious prosecution may support a section 1983 claim are virtually unanimous in holding that constitutional protection exists only with respect to criminal proceedings and not to civil proceedings. . . . ." As Defendants argue, "[i]n the present case, it is undisputed that Zisis was not subjected to the possibility of incarceration in the underlying civil proceedings instituted against him by Trustee Uhrick." *Defendants' Memorandum, p.* 11. Thus, they claim, Zisis has no claim under § 1983. Seizing on the language in *Smart, McMaster* and a few other cases from other circuits, Defendants argue that "a plaintiff may pursue a malicious prosecution claim under § 1983 only if the underlying action resulted in an arrest or seizure." *Id.*

■ The Seventh Circuit recently clarified the issue of malicious prosecution claims brought under § 1983 in *Spiegel v. Rabinovitz,* 121 F.3d 251 (7th Cir.1997), a case which is very much analogous to the present case. The court explained that "Title 42 U.S.C. § 1983 creates a federal cause of action for 'the deprivation, under color of [state] law, of a citizen's rights, privileges, or immunities secured by the Constitution and laws of the United States.' " *Id.* (internal citations omit-

ted). Regarding how a malicious prosecution claim might fit into the rubric of § 1983, the court wrote:

> "The first step in any § 1983 analysis is to pinpoint the specific constitutional right which was allegedly violated. . . ." In general, the common law tort of malicious prosecution does not amount to the deprivation of a constitutional right under 42 U.S.C. § 1983; however, malicious prosecution, like the common-law tort of defamation, can be a *component* of a constitutional tort. *Albright v. Oliver,* 975 F.2d 343, 346 (7th Cir.1992). For example, in *Albright* we stated that defamation accompanying a discharge from a job can make it impossible for a person to procure equivalent employment elsewhere, thus depriving him of the liberty of occupation, one of the liberties protected by the Due Process Clause. *Id.* In the same vein, malicious prosecution can result in imprisonment, which is likewise a deprivation of liberty within the confines of the Due Process Clause. *Id.* Put another way, we said that in the absence of "incarceration or other palpable consequences, malicious prosecution should not be actionable as a constitutional wrong." *Albright,* 975 F.2d at 347.

In the present case, Zisis claims that the underlying civil proceeding against him was malicious because, he alleges, Uhrick knew or should have known that he was not actually receiving Social Security benefits at the time in question. As a result, he states, he "suffered humiliation, attorney's fees, embarrassment, and other injuries and damages as a result of the false and fictitious allegations in the Complaint." *Complaint, p.* 3. This is very similar to the situation the Seventh Circuit addressed in *Spiegel.* As a result of an underlying prosecution (which, by the way, was a criminal prosecution), Spiegel allegedly endured "eviction, adverse employment status, and loss of income. . . ." *Spiegel,* 121 F.3d at 256. The Seventh Circuit held that "[a]lthough Spiegel's circumstances are unfortunate, the rationale of *Smart* instructs that none of them are deprivations of property of a constitutional magnitude." *Id.* The consequences faced by Zisis as a result of the state civil action instituted against him

are, although also very unfortunate, not even as palpable as those experienced by Spiegel. Zisis did not lose a home or a job; rather his damages are solely emotional. Consequently, under the rationale of *Smart* and *Spiegel*, Zisis' claim of malicious prosecution is not cognizable under § 1983, and summary judgment must be granted in favor of Defendants on that claim.

### 3. False Arrest Claim

At no point in his Complaint does Zisis use the term false arrest. For that matter, at no point in his Complaint does he use the term defamation or even malicious prosecution. However, the general tenor of the Complaint makes it clear that Zisis is basing his lawsuit on a theory of malicious prosecution. In their memorandum, Defendants address a claim of false arrest and so, to the degree that such a claim can be said to be asserted in this case, the court will also address it.

█ It is likely that any claim for false arrest was intended to be asserted only against Sheriff Squadrito and Harold West, a deputy whose investigation ultimately led to the issuance of an arrest warrant. As a result of the stipulation of dismissal that was filed as to those two defendants, any claim for false arrest may no longer exist in this case. In any event, if Zisis is in fact asserting such a claim against Uhrick, it must fail. As Defendants properly explain, " '[s]ection 1983 creates a cause of action based upon personal liability and predicated upon fault. An individual cannot be held liable in a § 1983 action unless he caused or participated in the alleged Constitutional deprivation.' " Defendants' Memorandum, p. 12 (quoting *Rascon v. Hardiman*, 803 F.2d 269, 274 (7th Cir.1986)). "Without a showing of direct responsibility for the improper action, liability will not lie against a supervisory official." *Id.* Zisis admitted that he was arrested by two deputies from the Allen County Sheriff's Department. Motion for Summary Judgment, Exh. 1, Zisis Depo., p. 40. Uhrick stated that he "was not personally involved in Zisis' arrest on criminal charges for welfare fraud on September 12, 1994." *Id.*, Exh. 2., Uhrick Aff., ¶ 12. He further stated that he "never personally spoke to the Allen County Sheriffs Department or the

Allen County Prosecutor's office about Zisis; nor did I personally provide any documentation or information to these organizations." *Id.*, ¶ 13. Attorney GiaQuinta stated that "[o]n February 14, 1994, I met with Joseph Squadrito, the Sheriff of Allen County, concerning the Zisis matter. I provided copies of the documents from the Social Security Administration showing Zisis' receipt of a lump sum payment in May, 1992 and the monthly benefit checks." *Id.*, GiaQuinta Aff., ¶ 5. Zisis argues that "it is clear that Trustee Uhrick caused to be instituted the prosecution of Zisis." Plaintiff's Response, p. 5. Even though Zisis does not dispute the fact that it was GiaQuinta and not Uhrick who met with Squadrito, he nonetheless alleges that "Uhrick initiated the criminal prosecution against Zisis by filing or directing others to file a criminal complaint with the Allen County Sheriff." *Id.* Zisis' allegation is unsupported by any evidence. In fact, the testimony of Uhrick and GiaQuinta, quoted above, makes it clear that it was GiaQuinta, not Uhrick, who contacted the Sheriff. Furthermore, Zisis ignores the fact that any decision to file criminal charges against him, which resulted in his arrest, could only have been made by the Allen County Prosecutor. And, as Defendants point out, "[a]fter the Allen County Prosecutor's Office submitted an Information for Welfare Fraud to the Allen Superior Court, the Court reviewed all of the evidence and determined that probable cause existed to issue a warrant for Zisis' arrest." Defendants' Memorandum, p. 17. It is undisputed that Uhrick was not the person who made the decision to file criminal charges against Zisis and to have him arrested. For that reason alone Uhrick is not subject to liability under § 1983 and is entitled to summary judgment on any claim of false arrest. Zisis' false arrest claim is founded solely on his own perception that Uhrick was out to get him, as it were, and his speculation that Uhrick somehow encouraged GiaQuinta to contact the Sheriff so as to set in motion the events that led to the arrest of Zisis. This is clearly an insufficient basis for a false arrest claim against Uhrick and the Township.

### 4. Malicious Prosecution Claim Under § 1983 Based on Underlying Criminal Proceedings

The parties agree that "[t]o state a claim for malicious prosecution under section 1983, a plaintiff must demonstrate that: (1) he has satisfied the requirements of a state law cause of action for malicious prosecution; (2) the malicious prosecution was committed by state actors; and (3) he was deprived of liberty." *Reed v. City of Chicago*, 77 F.3d 1049, 1051 (7th Cir.1996). To state a claim for malicious prosecution under Indiana law, a plaintiff must establish that: "(1) the defendant instituted or caused to be instituted a prosecution against the plaintiff, (2) the defendant acted with malice in doing so; (3) the prosecution was instituted without probable cause; and (4) the prosecution terminated in the plaintiff's favor." *Butt v. McEvoy*, 669 N.E.2d 1015, 1017 (Ind.App.1996).

██ In the present case, Zisis fails to establish the elements necessary to maintain a claim for malicious prosecution. He fails to establish that Uhrick caused the prosecution to be instituted. Even if one accepts for the sake of argument that Uhrick did cause the suit to be instituted, Zisis fails to establish that Uhrick acted with malice. Finally, he fails to establish that the prosecution was instituted without probable cause.

For the reasons discussed above concerning Zisis' false arrest claim, it is clear that Uhrick was not responsible for instituting the criminal proceedings against him. Even assuming that Uhrick urged GiaQuinta to meet with Sheriff Squadrito, as Zisis speculates, the Sheriff conducted his own investigation (through West) and then presented his findings to the Allen County Prosecutor. The Prosecutor's office then made the decision to file the criminal charges, and the Allen Superior Court made the determination that probable cause existed and issued an arrest warrant. Zisis presents no authority, nor was the court able to locate any, to support the proposition that Uhrick's remote involvement in setting into motion the events that culminated in the filing of criminal charges against Zisis (again, assuming Uhrick was in any way involved) is the sort of direct responsibility necessary for liability under § 1983. The evidence is simply insufficient to establish that Uhrick "instituted or caused to be instituted a prosecution" against Zisis. Since Zisis fails to establish this first prong of his state law claim for malicious prosecution, his § 1983 claim must also fail.

In addition, even assuming that Zisis could establish that Uhrick was instrumental in causing the criminal case to be instituted, Zisis fails to prove that Uhrick acted with malice. As stated previously, Zisis' theory that Uhrick was determined to retaliate against him for filing suit against the Township rests primarily on his own perceptions of Uhrick's motivations. The only "evidence" Zisis presents in support of this contention is the affidavit of Douglas Mawhorr. Mawhorr was a paralegal with Legal Services of Maumee Valley, Inc. Zisis claims that "the Trustee's office was notified by Legal Services of Maumee Valley through paralegal Douglas Mawhorr in March 1993 and April 1993 that Zisis had not received any Social Security benefits." Plaintiff's Response, p. 5. In his affidavit, Mawhorr stated:

> I went with Mr. Zisis to the St. Joe Township Trustee office in March and April of 1993 when he requested assistance for those months. At that time there was a great deal of friction between Legal Services and Mr. Zisis on one side and the St. Joe Township Trustee and their attorneys on the other side due to pending litigation. Mr. Zisis wanted to ensure he would be treated fairly and requested I attend his request for monthly assistance. While at the request for monthly assistance in both March and April, Zisis' Social Security benefits application was. She was informed each time by myself and Mr. Zisis to the current status of his application.[6]

Plaintiff's Response, Mawhorr Aff., ¶ 6. Defendants claim that Mawhorr's affidavit does

---

6. Obviously, there is some language missing from this paragraph of Mawhorr's affidavit. However, it appears that Mawhorr intended to state that Zisis' Social Security application was discussed at these meetings and that some female employee of the Township office (perhaps Berggoetz) was told about the status of that application.

not support Zisis' contention. Defendants argue that:

> Mawhorr's Affidavit does not in any way state that Mawhorr himself personally informed Trustee Uhrick as to the status of Zisis' Social Security benefits, much less that Mawhorr personally informed Trustee Uhrick that Zisis had not received any Social Security benefits. At most, a liberal construction of paragraph 6 of Mawhorr's Affidavit suggests that he may have told some employee of the Trustee's office about the current status of Zisis' application. However, nothing in Mawhorr's Affidavit can be construed as indicating that Mawhorr personally told anyone at the Trustee's office that Zisis was not receiving Social Security benefits at that time.

Defendants' Reply, p. 3. The court agrees that paragraph six of Mawhorr's affidavit is, at the very least, ambiguous. It certainly does not indicate that Uhrick knew in March and April of 1993 that Zisis was not receiving Social Security benefits. And it is unclear from the language exactly what it was that Mawhorr told some employee of the Township office. In any case, even assuming that some employee at the Township office was told specifically in March and April of 1993 that Zisis was not receiving benefits, and even assuming that Uhrick became privy to this information, it is still insufficient to establish that Uhrick acted with malice in causing the prosecution to be initiated (which, as discussed above, also assumes that Uhrick had any direct involvement at all). That is because, as Defendants point out, Zisis' argument ignores the January 5, 1994 letter the Township office received from the Social Security Administration. It is undisputed that the letter indicated that Zisis had been receiving Social Security benefits for nearly two years. Motion for Summary Judgment, Uhrick Aff., Exh. E. It is not difficult to understand how the Township office and Uhrick, faced with the information contained in the letter, would decide to contact their attorney concerning the matter. Notwithstanding what Township employees may or may not have been told in March and April of 1993, the January 5, 1994 letter on its face indicated that Zisis had received benefits. This fact not only defeats Zisis'

argument that Uhrick acted with malice, it actually goes to the crux of Defendants' defenses. The Township, Uhrick, and apparently the Sheriff and the Prosecutor, based their decisions on what seemed to be very clear and convincing language in the letter. Once all the parties learned of the unfortunate confusion regarding exactly when Zisis began receiving benefits, the civil and criminal proceedings were promptly dismissed. Regardless of any "friction" that existed between Zisis and the Township office, the actions taken by Uhrick and the Township are understandable in light of the infamous letter. As Zisis cannot establish that Uhrick acted with malice, he fails to establish the second prong of a state law claim for malicious prosecution.

Finally, Zisis fails to establish that the criminal prosecution was instituted without probable cause. It is undisputed that the Allen Superior Court made a probable cause determination. However, Zisis correctly states that a presumption of probable cause is rebuttable. Plaintiff's Response, p. 6. He cites the case of *Kroger Food Stores, Inc. v. Clark*, 598 N.E.2d 1084 (Ind.App.1992). In *Kroger*, the court explained that:

> While a judicial determination of probable cause in a criminal proceeding may constitute prima facie evidence of probable cause in a subsequent action for malicious prosecution, that evidence may be rebutted by other evidence showing that the finding of probable cause was induced by false testimony, fraud, or other improper means such as the withholding of material facts.

*Kroger*, 598 N.E.2d at 1089. Zisis argues that "Trustee Uhrick knew that it was impossible for Zisis to have received benefits prior to May or June 1993, therefore, he did not disclose all material facts known to him at the time of making the complaint to the Allen County Sheriff." Plaintiff's Response, p. 6. However, as the court has already determined that the evidence does not support Zisis' contention that Uhrick knew Zisis had not received benefits as was represented in the Social Security Administration's letter, Zisis fails to rebut the prima facie evidence of probable cause for the institution of criminal proceedings against him. Since Zisis

fails to prove the elements necessary to support a state law claim for malicious prosecution, his § 1983 action must also fail. For these reasons, summary judgment must be granted in favor of the Defendants on that claim.

### 5. State Law Claims for Malicious Prosecution and Defamation

Since this court has granted summary judgment in favor of Defendants on all claims over which it had original jurisdiction, the court has the discretion to remand the remaining state claims to the Allen Superior Court pursuant to 28 U.S.C. § 1367(c)(3). However, the court may alternatively choose to retain its supplemental jurisdiction over the state law claims and resolve them. "[A] district court should consider and weigh the factors of judicial economy, convenience, fairness and comity in deciding whether to exercise jurisdiction over pendent state-law claims." *Wright v. Associated Insurance Companies, Inc.*, 29 F.3d 1244, 1250 (7th Cir.1994) (citations omitted). "[T]he general rule is that, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits." *Id.* (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)). However, there are three well recognized exceptions to that rule. These include "when the statute of limitations has run on the pendent state law claim, precluding the filing of a separate suit in state court," or "when 'substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort,'" or "when it is absolutely clear how the pendent state claims can be decided." *Id.* at 1251. In the present case, this court has already invested substantial judicial resources in this suit. Much of the court's analysis. with respect to the federal claims is applicable to the state claims. Furthermore, the court determines that it is clear that Zisis' state law claims against Uhrick and the Township

have no merit. For these reasons, the court will exercise its supplemental jurisdiction and resolve the state law claims presented in this action.

■ For the reasons previously discussed, Zisis cannot prove the elements necessary to support a state law claim for malicious prosecution. In addition, Uhrick points out that even if such a claim could be maintained, Uhrick is entitled to immunity from suit under the Indiana Tort Claims Act. Defendants' Memorandum, p. 22. Indiana Code § 34–4–16.5–3(5) states:

> A governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from:
>
> . . .
>
> (5) the initiation of a judicial or an administrative proceeding . . .

This immunity is extended to the state and other political subdivisions and applies to suits alleging malicious prosecution. *Butt,* 669 N.E.2d 1015; *Board of Commissioners of Hendricks County v. King,* 481 N.E.2d 1327 (Ind.App.1985). Zisis does not suggest that Uhrick was acting outside the scope of his authority as Township Trustee when he passed the information from the Social Security Administration on to the Township's attorney. Thus, he is entitled to immunity from suit pursuant to Indiana law.[7]

■ Finally, Uhrick also claims that he is entitled to the advice of counsel defense. Defendants state that "[u]nder Indiana law, the advice of counsel defense is an absolute defense to a malicious prosecution action." Defendants' Memorandum, p. 23 (citing *Satz v. Koplow,* 397 N.E.2d 1082, 1086 (Ind.App. 1979).) Zisis also fails to address this defense in his response. It is undisputed that the Township provided its attorney, GiaQuinta, with the information received from the Social Security Administration. Motion for Summary Judgment, GiaQuinta Aff., ¶ 3. It is also undisputed that GiaQuinta "advised Trustee Uhrick and his employees that a civil

---

7. Zisis fails to address this immunity issue in his response. However, to the extent that he could claim that his argument that Uhrick withheld exculpatory information from the Sheriff took his

actions outside the scope of his authority, such an argument must fail in light of the court's determination that such was not the case.

lawsuit could be filed against Zisis to recover assistance payments made to Zisis by the Trustee's office based upon our good-faith belief that Zisis was also receiving Social Security benefits." *Id.,* ¶ 4. Based on Gia-Quinta's advice, the Township decided to proceed with a civil suit. *Id.,* Uhrick Aff., ¶ 9; Berggoetz Aff., ¶ 12. Thus, Uhrick and the Township are entitled to the advice of counsel defense.

Zisis states in his response brief that "Trustee Uhrick has failed to address Zisis' state-law claim for Defamation. Therefore, Trustee Uhrick's prayer for summary judgment should fail as to this allegation in the Complaint." Plaintiff's Response, p. 4. Those two sentences constitute Zisis' entire argument concerning any defamation claim. In reply, Defendants state that they did not address a defamation claim because, they assert, the Complaint does not contain such a claim. Defendants' Reply, p. 12. As Defendants point out, the only portion of Zisis' Complaint that could even arguably state a claim for defamation is the following:

> Richard G. Uhrick aided in the filing of criminal charges against plaintiff on August 23, 1994, for Welfare Fraud (see criminal information attached herein as Exhibit "D"); Plaintiff was arrested on September 12, 1994, and incarcerated; Plaintiff's case was seen on Crimestoppers and was reported in the newspapers, and was publicized to such a degree that Plaintiff has suffered emotional harm, psychological damage, and mental distress.

Complaint, p. 3, ¶ 9. On its face it appears that this paragraph of the Complaint was intended to support Zisis' claim for damages, not to assert a defamation claim. In fact, at no point in the Complaint does the term defamation even appear, and Zisis did not plead any facts to support a defamation claim. It appears that the first time Zisis actually used the term defamation or expressly stated that he was asserting a defamation claim was in his response brief to the Defendants' Motion for Summary Judgment. Plaintiff's response, p. 1. Of course, as previously stated, he does not discuss the claim or present any facts whatsoever to support it. Defendants argue that "even if a defamation claim were properly pled, it would necessarily fail for lack of proof of the essential elements." Defendants' Reply, p. 13. "To maintain an action for defamation, a plaintiff must show a communication with defamatory imputation, malice, publication, and damages." *Rambo v. Cohen,* 587 N.E.2d 140, 145 (Ind.App.1992) (citation omitted). As Defendants argue, "[i]n this case, there is no allegation, and no evidence, that Trustee Uhrick published or caused to be published any written statements about Zisis." Defendants' Reply, p. 13. While Defendants do not dispute that the situation with Zisis was presented in the media, they are correct that the record is devoid of any evidence that Uhrick or the Township Trustee office published any statement about Zisis or communicated any defamatory information to any media source. Furthermore, in light of the court's analysis of Zisis' other claims, it is clear that even if such a communication was made, it would have been based on Uhrick and/or the Township's good faith belief that Zisis had committed welfare fraud. Thus, Zisis likely would be unable to establish the malice element necessary to maintain a defamation action. Consequently, Zisis cannot maintain a defamation claim against Uhrick or the Township and the Defendants are entitled to summary judgment in their favor on that claim (to the extent that it even exists).

## CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment filed by Defendants St. Joseph Township and Richard G. Uhrick is hereby GRANTED as to all of the claims asserted by Plaintiff Pantelis Zisis.