**David ROBERTS, et al., Plaintiffs,**

v.

**Ed COHN, et al., Defendants.**

**Civ. No. 3:97cv476 AS.**

United States District Court,
N.D. Indiana,
South Bend Division.

July 16, 1999.

David Roberts, Michigan City, IN, plaintiff pro se.

Brad Angleton, Michigan City, IN, plaintiff pro se.

Robert Barnett, Michigan City, IN, plaintiff pro se.

Joseph Blackmer, Michigan City, IN, plaintiff pro se.

Russell E. Boyd, Michigan City, IN, plaintiff pro se.

John Brennan, Michigan City, IN, plaintiff pro se.

David Dragon, Michigan City, IN, plaintiff pro se.

Charles Franklin, Michigan City, IN, plaintiff pro se.

Steve Jordan, Michigan City, IN, plaintiff pro se.

Stuart Kennedy, Michigan City, IN, plaintiff pro se.

Tim Kutscheid, Michigan City, IN, plaintiff pro se.

Richard A. Mitchell, Michigan City, IN, plaintiff pro se.

Tom Moore, Michigan City, IN, plaintiff pro se.

Antonio S. Noyas, Michigan City, IN, plaintiff pro se.

Kevin Vanleer, Michigan City, IN, plaintiff pro se.

Lonnie Williams, Michigan City, IN, plaintiff pro se.

David L. Steiner, Indiana Attorney General, Indianapolis, IN, for defendants.

## MEMORANDUM AND ORDER

ALLEN SHARP, District Judge.

This matter is before the court on a motion for summary judgment filed by the defendants on April 21, 1999. The plaintiffs filed their response on June 25, 1999, to which the defendants declined to reply. For the following reasons, the defendants' motion for summary judgment will be granted.

### Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). However, Rule 56(c) is not a requirement that the moving party negate his opponent's claim. *Fitzpatrick v. Catholic Bishop of Chicago*, 916 F.2d 1254, 1256 (7th Cir.1990). Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The standard for granting summary judgment mirrors the directed verdict standard under Rule 50(a), which requires the court to grant a directed verdict where there can be but one reasonable conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A scintilla of evidence in support of the non-moving party's position is not sufficient to successfully oppose summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff." *Id. In re Matter of Wildman*, 859 F.2d 553, 557 (7th Cir.1988); *Klein v. Ryan*, 847 F.2d 368, 374 (7th Cir.1988); *Valentine v. Joliet Township High School District No. 204*, 802 F.2d 981, 986 (7th Cir.1986). No genuine issue for trial exists "where the record as a whole could not lead a rational trier of fact to find for the nonmoving party." *Juarez v. Ameritech Mobile Communications, Inc.*, 957 F.2d 317, 322 (7th Cir.1992) (quoting *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

Initially, Rule 56 requires the moving party to inform the court of the basis for the motion, and to identify those portions of the "pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, which demonstrate the absence of a genuine issue of material fact, *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548." The non-moving party may oppose the motion with any of the evidentiary materials listed in Rule 56(c), but reliance on the pleadings alone is not sufficient to withstand summary judgment. *Goka v. Bobbitt*, 862 F.2d 646, 649 (7th Cir.1988); *Guenin v. Sendra Corp.*, 700 F.Supp. 973, 974 (N.D.Ind.1988); *Posey v. Skyline Corp.*, 702 F.2d 102, 105 (7th Cir.), *cert. denied*, 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983).

So that the district court may readily determine whether genuine issues of material fact exist, under Local Rule 56.1, the

moving party is obligated to file with the court a "Statement of Material Facts" supported by appropriate citation to the record to which the moving party contends no genuine issues exist. In addition, the nonmovant is obligated to file with the court a "Statement of Genuine Issues" supported by appropriate citation to the record outlining all material facts to which the nonmovant contends exist that must be litigated. *See, Waldridge v. American Hoechst Corp. et al.,* 24 F.3d 918 (7th Cir.1994). In ruling on a summary judgment motion the court accepts as true the non-moving party's evidence, draws all legitimate inferences in favor of the non-moving party, and does not weigh the evidence or the credibility of witnesses. *Anderson,* 477 U.S. at 249–251, 106 S.Ct. at 2511. Furthermore, in determining the motion for summary judgment, the court will assume that the facts as claimed and supported by admissible evidence by the moving party are admitted to exist without controversy, except to the extent that such facts are controverted in the "Statement of Genuine Issues" filed in opposition to the motion. L.R. 56.1

Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute. *Id.* The issue of fact must be genuine. Fed. R.Civ.P. 56(c), (e). To establish a genuine issue of fact, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348; *First National Bank of Cicero v. Lewco Securities Corp.,* 860 F.2d 1407, 1411 (7th Cir.1988). The non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *Id.* A summary judgment determi-

nation is essentially an inquiry as to "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–252, 106 S.Ct. 2505. Finally, the court notes that, "[i]t is a gratuitous cruelty to parties and their witnesses to put them through the emotional ordeal of a trial when the outcome is foreordained" and in such cases summary judgment is appropriate. *Mason v. Continental Illinois Nat'l Bank,* 704 F.2d 361, 367 (7th Cir.1983).

### Discussion

The plaintiffs [1] are inmates at the Indiana State Prison ("Prison"), which is a maximum security facility. In their complaint the plaintiffs assert that the defendants (officials of the Indiana Department of Correction ("IDOC") and the Prison) deprived them of rights under 42 U.S.C. § 1983 and the First and Fourteenth Amendments by not permitting them to personally possess typewriters and word processors, contrary to a long established custom. The plaintiffs also assert supplemental state law claims.

The defendants seek summary judgment on the plaintiffs' claims, arguing that the plaintiffs do not have a constitutional right to possess typewriters and wordprocessors because they have other means of communicating with courts, family, friends and the general public.

■■■ It is well established that prison inmates do not have a constitutional right to use or possess typewriters and word processors. *Taylor v. Coughlin,* 29 F.3d 39 (2nd Cir.1994); *Sands v. Lewis,* 886 F.2d 1166, 1172 (9th Cir.1989); *American Inmate Paralegal Assoc. v. Cline,* 859 F.2d 59, 61 (8th Cir.1988). Although it is clear that inmates have the right to meaningful access to the courts, this access is satisfied

1. David Roberts, Brad Angleton, Robert Barnett, Joseph Blackmer, Russell E. Boyd, John Brennan, David Dragon, Charles Franklin, Steve Jordan, Stuart Kennedy, Tim Kut- scheid, Richard Mitchell, Tom Moore, Antonio S. Noyas, Kevin Vanleer, and Lonnie Williams.

by providing basic materials, such as ink pens and paper, for the preparation of legal materials.[2] *Lewis v. Casey,* 518 U.S. 343, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996); *Bounds v. Smith,* 430 U.S. 817, 97 S.Ct. 1491, 1498, 52 L.Ed.2d 72 (1977); *Gentry v. Duckworth,* 65 F.3d 555, 558 (7th Cir.1995).

The plaintiffs contend that for over 20 years the prison has had a policy of permitting inmates to possess typewriters and word processors, and thus they now have a "state created right" to continue possessing these machines. The plaintiffs argue that the Prison cannot now take away this "state created right" on grounds which violate the Fourteenth Amendment. However, it is clear that the Prison's prior typewriter policy did not give birth to a "state created right" for inmates to possess typewriters and word processors. The plaintiffs are inmates of a correctional institution, and it is well-known that correctional officials have broad discretion to make and change the rules and regulations of the institutions under their jurisdiction. *Thornburgh v. Abbott,* 490 U.S. 401, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989); *see also Hudson v. Palmer,* 468 U.S. 517, 104 S.Ct. 3194, 3199, 82 L.Ed.2d 393 (1984) (lawful incarceration necessarily brings with it the restriction of many privileges and rights).

In any event, the plaintiffs have not shown how the new typewriter and word-processor policy violates the Fourteenth Amendment. The plaintiffs contend that the policy is being applied unequally because inmates in one portion of the Prison (X–Row) are permitted to keep the typewriters they presently own, but will be required to dispose of them after the warranty period expires and the typewriter ceases functioning. Even assuming for purposes of this order that the policy was not applied consistently throughout the Prison, the plaintiffs have failed to properly assert a Fourteenth Amendment equal protection claim because they have not shown that the policy impermissibly discriminates on the basis of any "suspect classification", such as race or religion. *Bohen v. City of East Chicago,* 799 F.2d 1180, 1186–87 (7th Cir.1986); *Cuautle v. Tone,* 851 F.Supp. 1236, 1242 (C.D.Ill. 1994). Moreover, it appears that the plaintiffs are all X–Row inmates, meaning that they are being treated *more favorably* than the general inmate population by virtue of being permitted to keep their typewriters and word processors until they break down. Thus, these plaintiffs have absolutely no basis on which to maintain an equal protection claim.

The plaintiffs also assert First Amendment claims. According to the plaintiffs, the new policy restricts their right of free speech because publishers will not accept handwritten manuscripts. In order to prevail on their First Amendment claim, the plaintiffs would have to show that the typewriter and word processor policy was imposed to restrict the exercise of their protected rights. *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977); *Smart v. Board of Trustees of the University of Illinois,* 34 F.3d 432, 434–35 (7th Cir.1994). The plaintiffs would also have to prove that the defendants had no security reasons for their actions. *Id.*

In the present case, there has been no showing that the plaintiffs have been deprived of any right of free speech and expression. While it may be true that most publishers will not accept handwritten manuscripts, there is no indication that the plaintiffs are prohibited from sending handwritten manuscripts to friends, family,

2. The plaintiffs acknowledge that they have access to the courts by way of handwritten pleadings, but suggest that the courts give little consideration to such pleadings. This court assures the plaintiffs that all handwrit-

ten pleadings are given full consideration. Moreover, the plaintiffs acknowledge that they have limited access to typewriters at the Prison's law library.

or professional typists to be typed up and then sent to the publisher. Additionally, the plaintiffs have not alleged or shown that they have been unable to achieve publication of any literary work as a result of the Prison's policy. Thus, the plaintiffs' First Amendment claim is not ripe. *Berrigan v. Norton*, 451 F.2d 790, 792 (2nd Cir.1971) (no justiciable controversy where inmate alleged he was prohibited from publishing a sermon outside the prison, where inmate made no showing that he had ever attempted to publish a sermon).

■ The plaintiffs also assert a "liberty interest violation". According to the plaintiffs, inmates are granted a reduction in their sentences for completion of certain educational programs, including college level degree programs. However, many of the courses in the programs allegedly require the submission of typewritten homework assignments. The plaintiffs argue that the denial of personal typewriters and word processors will "seriously affect a Plaintiff's ability to complete many of his required assignments" causing failure in the courses and inability to get a reduction in sentence. Even assuming that a "liberty interest" is implicated by the plaintiffs' contention[3], the plaintiffs have not supported such a claim. The plaintiffs have not presented any evidence that any one of them did, in fact, fail a course or program of study due to his inability to turn in typewritten work. In fact, the plaintiffs have not submitted any evidence showing that prisoners are required to submit typewritten homework of any kind. Therefore, the plaintiffs have not shown a justiciable

controversy at this time. *See Berrigan, supra.* Additionally, the plaintiffs have acknowledged that typewriters are available at the Prison to use for educational purposes[4].

■ In any event, even if it were found that the plaintiffs' constitutional rights were restricted by the Prison's typewriter/wordprocessor policy, the defendants have shown legitimate reasons for this limited restriction. Prison decisions that are reasonably adapted to achieving important penological objectives may operate to restrain the exercise of rights secured by the Constitution. *Caldwell v. Miller*, 790 F.2d 589, 595–97 (7th Cir.1986); *Childs v. Duckworth*, 705 F.2d 915, 919–20 (7th Cir.1983). A federal court will not substitute its judgment for that of prison administrators "in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations." *Pell v. Procunier*, 417 U.S. 817, 94 S.Ct. 2800, 2806, 41 L.Ed.2d 495 (1974). "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64 (1987).

The defendants have submitted the declaration of Dale Monroe, who is the Policy Coordinator at the Prison. Monroe states that the property policy at issue here was "developed to limit the property that an offender could possess within a prison of the IDOC for security and safety reasons"

---

3. An unlikely proposition, as this court noted in *Faust v. Parke*, 1996 WL 698024, *9 (N.D.Ind. Oct. 3, 1996), aff'd, 114 F.3d 1191 (7th Cir.1997) ("There is nothing about the possession, maintenance, or repair of a typewriter or wordprocessor which could conceivably implicate any type of liberty interest").

4. The court notes that the evidence shows that the Prison phased out the use of personal typewriters and word processors at the same time that it began purchasing typewriters for general population use. As the Superintendent

of the Prison stated in a "Request For Exemption From Policy", dated June 25, 1998:

> It is the intent of this administration to eliminate the personal possession of typewriters/word processors by the offender population by purchasing an adequate supply of typewriters for the Law Library and the Education Department. Once the typewriters are purchased and in place there will be no need for offenders to possess a typewriter in their individual cells.

Defendants' Motion for Summary Judgment, Exh. B.

and that the "amount of property possessed by offenders at the Prison has been a problem" due to the difficulty of conducting periodic searches of cells and of the potential fire hazard[5]. Monroe further states that "[t]ypewriters and word processors also contain components that can be fashioned into weapons and raise serious security concerns."[6] The plaintiffs take issue with the Monroe Declaration and have submitted affidavits of long-term inmates who state that they have never been aware of an incident in which an inmate's personal typewriter caused a security problem, and that other items (such as televisions) contain parts that could just as easily be made into weapons.

Clearly, however, the inmates' affidavits miss the point. Prison officials do not have to wait until they are presented with actual security breaches before they may promulgate policies and regulations to deal with potential hazards. It is easily conceivable that both typewriters and word processors contain parts which may be fashioned into weapons. Additionally, as the price of these machines continue to drop they will arguably become available to more and more inmates, including those whose interest in the machines is less than literary. Finally, taking typewriters and word processors off the list of permitted property serves the interest of reducing the amount of property kept in the inmates' cells. Thus, the policy is a legitimate reaction to a valid security concern.

The plaintiffs also attempt to cast doubt on the Monroe Declaration by submitting affidavits which purport to explain that the "real" reason for the new policy was not for security reasons, but to bring the Prison in uniformity with the IDOC's inmate personal property standardization policy. That is, the IDOC wished for each prison in the state to have the same personal property rules, which rules excluded typewriters and word processors. Obviously, however, the inmate personal property rules adopted by the IDOC serve the major function of protecting the security of the facilities and, thus, the Prison's act of conforming to the IDOC policy furthers the Prison's legitimate interest in penal security.

The plaintiffs have failed to sustain any of their federal claims against the defendants and summary judgment will be granted in the defendants' favor. Additionally, the plaintiffs' supplemental state law claims will be dismissed. 28 U.S.C. § 1367; *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *Hughes v. Meyer*, 880 F.2d 967, 972 (7th Cir.1989).

*Conclusion*

For all of the foregoing reasons, the defendants' motion for summary judgment is hereby GRANTED, and the plaintiffs' supplemental state law claims are hereby DISMISSED WITHOUT PREJUDICE.

---

**5.** Monroe Declaration at ¶ 5.

